



**MATTHEW CAMPBELL**
FEDERAL PUBLIC DEFENDER

**Senior Litigator**
Kia D. Sears

# OFFICE OF THE FEDERAL PUBLIC DEFENDER
DISTRICT OF THE VIRGIN ISLANDS

**Assistant Federal Public Defenders**
Gabriel Villegas
Melanie L. Turnbull
Lisa L. Brown Williams
Tiana M. Brown

September 30, 2025

Denise N. George
Assistant U.S. Attorney
District of the Virgin Islands
Ron DeLugo Federal Building
5500 Veterans Drive, Suite 260
St. Thomas, VI 00802
Email: denise.george@usdoj.gov

**Re:** **USA v. Rosniel Diaz-Bautista**
**Case No. 2024-cr-20**
**Discovery Request**

Dear Attorney George:

I write this letter on behalf of my client Rosniel Diaz-Bautista in connection with the above-captioned case seeking certain discovery and inspection pursuant to Fed. R. Crim. P. 7, 12, 16 and LRCr 16.1, in lieu of formal motions which might unnecessarily burden the Court. In the event of a disagreement between us as to whether Mr. Diaz-Bautista is entitled to any particular item, we can then request that the Court intervene and resolve the conflict.

Specifically, we are requesting discovery materials and or stipulations pertaining to your filing of the Death Notice on July 31, 2025 (ECF No. 54) in order to determine whether the internal Department of Justice's (herein, DOJ) authorization process (the protocols) were followed. Discovery and inspection of the items described below is both reasonable and necessary for the defense to evaluate whether the authorization process was arbitrary and or discriminatory. Additionally, the proposed stipulations will expedite the discovery process by the mutual agreement of uncontroverted facts that led up to the filing of the Death Notice on July 31, 2025.

These materials are necessary for the defense to determine if the Department of Justice acted in an arbitrary and discriminatory manner in authorizing the death penalty for Mr. Diaz-Bautista. As your office is aware, the defense consented to four waivers of speedy trial based on your office's representations that your local office was seeking an expedited decision from DOJ without the need for a defense submission.

**Exhibit A**

1

Division St. Thomas
1336 Beltjen Rd., Suite 202
St. Thomas, VI 00802-6746
Tel (340) 774-4449
Fax (340) 776-7683



Division of St. Croix
4094 Diamond Ruby, Suite 5
Christiansted, VI 00820
Tel. (340) 773-3585
Fax (340) 773-3742

*Discovery Letter*
*USA v. Rosniel Diaz-Bautista*
*Case. No. 2024-cr-20*

### I.　　Requested stipulations/admissions

It is our understanding that the following matters are not subject to reasonable dispute, nor would they be contested by the government in litigation. Towards that end, we request stipulations/admissions:

a. That the U.S. Attorney's Office submitted this case to the Department of Justice pursuant to Justice Manual § 9-10.070 ("Expedited Decision Submissions"), section (A)(5), *to wit*: "where the United States Attorney … is able to recommend the death penalty not be sought without first receiving input from defense counsel."

b. That the U.S. Attorney's Office never requested a defense submission or the aforementioned "input".

c. That the DOJ Capital Review Committee never requested a defense submission or extended an invitation/opportunity for defense counsel to meet with the Committee.

d. That defense counsel had not otherwise "been afforded an opportunity to present evidence and argument in mitigation"[1] before the Attorney General's decision to seek the death penalty.

e. That "two or more members of the Capital Review Committee [did not] request a Committee conference after the Capital Review Committee … conferred in person or by teleconference,"[2]

> Alternatively, if the prosecution takes the position that two or more members of the Committee **did** request a conference, we request all correspondence and communication relevant to § 9-10.130's requirement that in that event, "a Capital Case Section attorney … confer with representatives of the United States Attorney's Office or Department component to establish a date and time for the Capital Review Committee to meet with defense counsel and representatives of the United States Attorney's Office or Department component to consider the case."

f. That the Committee's recommendation agreed with the U.S. Attorney's "Expedited Decision" no-seek request.

---

[1] See, Justice Manual § 9-10.130.

[2] Such a request for Committee Conference would be required by § 9-10.130 in the event "two or more members" did not agree with the U.S. Attorney's recommendation without such a meeting. Per § 9-10.130, "[a] request by two or more Committee members for a conference removes a case from the "expedited decision" process (see JM 9-10.070), and the submitting office may seek an indictment before the review is completed. No final decision to seek the death penalty shall be made if defense counsel has not been afforded an opportunity to present evidence and argument in mitigation."

2

*Discovery Letter*
*USA v. Rosniel Diaz-Bautista*
*Case. No. 2024-cr-20*

    g. That "a copy of the Committee's recommendation memorandum" was never provided to the U.S. Attorney "when it [was] transmitted to the Attorney General", nor was the U.S. Attorney provided an opportunity to "respond to the Committee's analysis in a memorandum directed to the Deputy Attorney General."[3]

    h. That from the date of Mr. Diaz Bautista's arrest, until February 5, 2025, the version of the Protocol in effect was January, 2023, specifically including the revisions to the Protocol which occurred under the Biden Administration.

    i. That on February 5, 2025, all revisions to the Protocol which occurred under the Biden Administration were "suspended for period of 45 days" for "review [of] such revisions and … recommendations to the Deputy Attorney General concerning whether such revisions should be retained, amended, or rescinded".[4]

    j. That from expiration of the 45-day review period until May 15, 2025, no further "suspension" was ordered, nor substantive revisions announced.

    k. That the version of the Protocol currently posted on the DOJ website, dated "May, 2025", and bearing the date 5/15/25 has indeed been in effect since May 15, 2025.

**II.  Discovery requests**

We believe that each of the following matters are directly relevant to the extent to which the Protocol was complied with or violated, and are "within the government's possession, custody, or control" and "material to preparing the defense" to the now-capital nature of this case. *See* Fed.R.Crim.P. 16:

    a. All correspondence and communications related to "consultation with the Capital Case Section" that occurred prior to Indictment, as required by § 9-10.040.[5]

    b. All correspondence, communications, documents and other tangible papers or objects related to the "Mandatory Pre-Indictment Review" required by § 9-10.060.[6]

---

[3] This would be required by §9-10.130 if the Committee's recommendation differed from the U.S. Attorney's.

[4] See AG Memo *Reviving the Federal Death Penalty and Lifting the Moratorium on Federal Executions*, February 5, 2025.

[5] "Prior to seeking an indictment for an offense potentially punishable by death, the United States Attorney or Assistant Attorney General shall consult with the Capital Case Section.". Per 9-10.040, "[t]his consultation will help streamline the process of preparing submissions made pursuant to this Chapter, ensure that charging documents are crafted in accordance with applicable legal and policy requirements, and help ensure that applicable deadlines are met."

[6] "Absent extenuating circumstances, prior to seeking an indictment charging a capital-eligible offense, the United States Attorney or Assistant Attorney General shall submit the case for review

3

*Discovery Letter*
*USA v. Rosniel Diaz-Bautista*
*Case. No. 2024-cr-20*

> In the event the government asserts that "extenuating circumstances" prevented the Pre-Indictment Review, we request a copy of the "notice to the Capital Case Section describing the extenuating circumstances that necessitate the return of the indictment before the pre-indictment review process can be initiated or completed," as required by § 9-10.060.[7]

c. A blank copy of the "summary form to be used for submission of expedited decision cases" which is "available to Department attorneys at the Capital Case Section site on DOJNet," as described in § 9-10.070,[8] as well as the completed form submitted in this case.

d. The "Expedited Decision Submission" which was forwarded to DOJ, as described in § 9-10.070[9] and § 9-10.080(C). We note that per § 9-10.070, "[s]ubmissions for expedited decision cases in categories A(4) and A(5) should be in the form of the prosecution memorandum described in JM 9-10.080(A) and also should include the sealed non-decisional information form described in JM 9-10.080(C)." See, § 9-10.070.

> We further note that per the Protocol, the "prosecution memorandum" forwarded to DOJ should be sufficiently detailed to fully inform reviewers of the basis for the United States Attorney's or Assistant Attorney General's recommendation [and] should include:
>> (1) Deadlines. Any deadline established by the Court for the filing of a notice of intent to seek the death penalty, trial dates, or other time considerations that could affect the timing of the review process should be noted on the first page of the memorandum.
>> (2) A narrative delineation of the facts and separate delineation of the supporting evidence. Where necessary for accuracy, a chart of the evidence by

---

pursuant to the provisions of this Chapter."

[7] "In the event that a United States Attorney … determines that extenuating circumstances exist such that mandatory pre-indictment review is not feasible, or in the event that extenuating circumstances require the return of an indictment in a case in which a United States Attorney … submitted the case for preindictment review but the review has not been completed, the United States Attorney … shall submit, prior to seeking the indictment, a notice to the Capital Case Section describing the extenuating circumstances that necessitate the return of the indictment before the pre-indictment review process can be initiated or completed."

[8] "A copy of the summary form to be used for submission of expedited decision cases is available to Department attorneys at the Capital Case Section site on DOJNet."

[9] "Submissions for expedited decision cases in categories A(4) and A(5) should be in the form of the prosecution memorandum described in JM 9-10.080(A), and also should include the sealed non-decisional information form described in JM 9-10.080(C) … Submissions in categories A(4) and A(5) should be marked as 'Expedited Decision' cases and will be reviewed expeditiously by the Capital Review Committee, which shall make a recommendation whether to seek capital punishment to the Attorney General, through the Deputy Attorney General, as described in JM 9-10.130, or defer making a recommendation to allow development of additional evidence."

4

*Discovery Letter*
*USA v. Rosniel Diaz-Bautista*
*Case. No. 2024-cr-20*

> offense and offender should be appended.
> (3) Discussion of relevant prosecutorial considerations.
> (4) Death penalty analysis. The analysis must identify applicable threshold intent factors under 18 U.S.C. § 3591, applicable statutory aggravating factors under 18 U.S.C. §§ 3592(b)-(d), and applicable mitigating factors under 18 U.S.C. § 3592(a). In addition, the United States Attorney or Assistant Attorney General should include his or her conclusion on whether all the aggravating factor(s) found to exist sufficiently outweigh all the mitigating factor(s) found to exist to justify a sentence of death, or in the absence of mitigating factors, whether the aggravating factor(s) alone are sufficient to justify a sentence of death. The analysis should also include a discussion of the standards for determination as set forth in JM 9-10.140.
> (5) Background and criminal record of the capital-eligible defendants.
> (6) Background and criminal record of the victim.
> (7) Victim impact. Views of the victim's family on seeking the death penalty and other victim impact evidence should be provided.
> (8) Discussion of the federal interest in prosecuting the case.
> (9) Foreign citizenship. The memorandum should include a discussion on whether the requirements of the Vienna Convention on Consular Relations have been satisfied (*see* JM 9-2.173 and Fed. R. Crim. Pro. 5(d)(1)(F) regarding consular notification when foreign nationals are arrested).
> (10) Recommendation of the United States Attorney or Assistant Attorney General on whether the death penalty should be sought.

e.  A copy of any proposed/draft Indictment[10] which "include[d] the special findings necessary for the death penalty to be authorized by statute," as required by § 9-10.070 and § 9-010.090.[11]

   Assuming that no such proposed Indictment containing Special Findings was ever prepared/submitted, we request all correspondence and communications concerning the government's **failure** to include such "Notice of Special Findings", as required by § 9-10.090.[12]

---

[10]   We are aware that the Superseding Indictment (ECF. No. 64), filed two weeks after the Notice of Intent ECF No. 54), contains such Special Findings. We are requesting any draft Indictments which were forwarded to DOJ prior to the **initial** Indictment (ECF No. 24)(filed December 17, 2024), per the referenced requirements.

[11]   See § 9-10.070 ("Indictment. Copies of all existing and proposed indictments and superseding indictments should be attached. As described in JM 9-10.090, the indictments should include the special findings necessary for the death penalty to be authorized by statute.") and 9-10.090

[12]   Unless "the Attorney General has directed the United States Attorney … not to seek the death penalty before the return of an indictment charging capital-eligible offenses … [and] regardless of whether the United States Attorney … ultimately recommends that the Attorney General authorize seeking the death penalty …, the indictment shall allege as special findings: (1) that the defendant is

5

*Discovery Letter*
*USA v. Rosniel Diaz-Bautista*
*Case. No. 2024-cr-20*

    f.    All correspondence and communications between the United States Attorney's Office and DOJ concerning each of the deadlines imposed by the Court for any Notice of Intent to seek the death penalty, as required by § 9-10.080.[13]

    g.    All correspondence and communications concerning "the views of the victim's family concerning the death penalty", as required by § 9-10.100.[14]

    h.    All correspondence and communications concerning whether the "Federal interest in the prosecution is more substantial than the interests of the State or local authorities," as required by § 9-10.110.[15]

    i.    All correspondence, communications and materials related in any way to specific "mitigating factors" that any of the actors in "the multi-tier process used to make determinations"[16] may have considered, as required by §9-10.140.[17] This "multi-tier process" includes any such

---

over the age of 18; (2) the existence of the threshold intent factors specified in 18 U.S.C. § 3591(a)(2); and (3) the existence of the statutory aggravating factors specified in, as relevant, 18 U.S.C. §§ 3592(b), (c), or (d)."

[13] "The point-of-contact in the United States Attorney's Office or Department component is under a continuing obligation to update the Capital Case Section about developments or changes in court scheduling or any other material aspect of the case."

[14] "Unless extenuating circumstances exist, the United States Attorney or Assistant Attorney General should consult with the family of the victim, if reasonably available, concerning the decision on whether to seek the death penalty. The United States Attorney or Assistant Attorney General should include the views of the victim's family concerning the death penalty in any submission made to the Department. The United States Attorney or Assistant Attorney General should notify the family of the victim of all final decisions regarding the death penalty."

[15] This case arose as a local prosecution in Virgin Islands Superior Court. "When concurrent jurisdiction exists with a State or local government, a Federal indictment for an offense subject to the death penalty generally should be obtained only when the Federal interest in the prosecution is more substantial than the interests of the State or local authorities. See Principles of Federal Prosecution, JM Chapter 9-27.000; see also Memorandum from the Attorney General dated August 12, 2013 ("Federal Prosecution Priorities").")

[16] See, § 9-10.140 (describing " … the multi-tier process used to make determinations in this chapter …")

[17] "In determining whether it is appropriate to seek the death penalty, the United States Attorney or Assistant Attorney General, the Capital Review Committee, the Deputy Attorney General, and the Attorney General will determine whether the applicable statutory aggravating factors and any non-statutory aggravating factors sufficiently outweigh the applicable mitigating factors to justify a sentence of death or, in the absence of any mitigating factors, whether the aggravating factors themselves are sufficient to justify a sentence of death. Reviewers are to resolve ambiguity as to the presence or strength of aggravating or mitigating factors in favor of the defendant."

*Discovery Letter*
*USA v. Rosniel Diaz-Bautista*
*Case. No. 2024-cr-20*

    mitigating factors considered by "the United States Attorney …, the Capital Review Committee, the Deputy Attorney General, and the Attorney General." *Id.*

j. All correspondence between the DOJ Committee and the U.S. Attorney's Office concerning the "additional information" requested by the Committee to "assist their review", as referenced in the government's third and fourth extension requests.[18]

k. All correspondence and communications concerning or relevant to the four unopposed extensions of the deadline for the filing of a Notice of Intent, as well as the decision-making process not to request a fifth extension.

l. All correspondence, communications and other information relevant to whether or not the Committee ever in fact had a formal "meeting" of the type which has been offered in virtually every other authorized case in modern federal death penalty history, and if so, the names and positions of all voting members and other attendees, including U.S. Attorney's Office participants.

m. The names, case numbers and relevant details of any other case(s) known to the government where a formal decision to seek the death penalty was made without first providing defense counsel an opportunity to present argument against authorization, and/or an invitation to meet with the Committee.

n. The name and position of the individuals from the Capital Case Section and Capital Review Committee which the government believes are most knowledgeable and well-suited to be subpoenaed to provide relevant information and testimony, in the event the Court determines that an evidentiary hearing on these matters is warranted.

o. A copy of the letter from the Attorney General directing the United States Attorney to seek the death penalty, as required by § 9-10.050.[19]

    Relatedly, we also request all correspondence, communications and information which might suggest that the Notice of Intent was a "prophylactic" or "protective"[20] notice,

---

[18] See, *United States' Amended Motion for Extension of Time* [ECF No. 47] ("The Committee has requested additional information to assist their review. Government counsel remains in the process of obtaining the requested information and providing it to the Committee"); *United States' Unopposed Motion for an Additional 45 Day Extension of Time* [ECF No. 50] ("The Committee has requested and received additional information to assist their review after Government counsel completed the retrieval of the requested information and provided it to the Committee.")

[19] "The Attorney General will convey the final decision to the United States Attorney or Assistant Attorney General in a letter directing him or her to seek or not to seek the death penalty."

[20] In an early Federal Death Penalty Act case, the Court rejected a "notice of intent to seek the death penalty [which] was, for all purposes, a hoax" where "[t]he Attorney General of the United States

7

*Discovery Letter*
*USA v. Rosniel Diaz-Bautista*
*Case. No. 2024-cr-20*

or that the Attorney General was in any other manner not fully apprised of all relevant information in sufficient time to make a "wise and well-informed decision whether to seek the death penalty," as the "ends of justice" require.[21]

p. A complete listing and description of "all previous Department policies relating to the death penalty that are inconsistent with the Executive Order [14164] and the policies set forth herein" which were "rescinded effective immediately" per the Attorney General's February 5, 2025 Memorandum *Reviving the Federal Death Penalty and Lifting the Moratorium on Federal Executions*.

q. All instances where the government has argued, utilized or otherwise relied upon its purported compliance with the Protocol to gain a strategic advantage in litigation, including but not limited to 1) defending against trial/appellate level claims of arbitrariness, 2) supporting requested continuances or defending speedy trial claims, 3) justifying the federal death penalty process to Congress, and the like.

r. All correspondence and materials generated pursuant to the "Reporting Requirements" of § 9-10.180, *to wit*, that "the Capital Case Section must be immediately notified when:
 … A capital offense is charged or when an indictment is obtained pertaining to conduct that could be, but has not been, charged as a capital offense …
A deadline for filing a notice of intent to seek the death penalty or a trial date is established or modified ... [and]
There are any developments that could affect the ability to file a notice of intent to seek the death penalty sufficiently in advance of trial to allow the defense and prosecution to prepare for a capital punishment hearing."

s. All correspondence and communications concerning the Committee's recommendation to the Attorney General, required by § 9-10.130.[22]

---

had not certified this death-penalty eligible prosecution and the meeting of counsel with the Death Penalty Review Committee had not been held [and] the filing of the notice of intent to seek the death penalty had been made upon instructions received from a U.S. Department of Justice attorney related to the Death Penalty Review Committee 'as a protective measure while the determination is made in fact.' *United States v. Rosado-Rosario*, Criminal No. 97-049 (JAF), 1998 U.S. Dist. LEXIS 673, at *6 (D.P.R. Jan. 15, 1998),

[21] *United States v. Dominguez-Maqueda*, No. CR 06-86 JB, 2006 WL 1308266, at *5 (D.N.M. 2006)( "[t]he ends of justice require that prosecutors make wise and well-informed decisions on whether to seek the death penalty to guarantee that this ultimate punishment is used only when most appropriate ...")(relied upon by the government during the Trump I administration in *U.S. v. Bush*, 8-cr-00188-CHB-RSE (WD KY) (11/19/18)(DE 9), and *U.S. v. Purinton* 2:17-cr-20028-CM-JPO (D KS)(DE 20)(7/18/17).

[22] "After considering all information submitted to it, the Committee shall make a recommendation to the Attorney General through the Deputy Attorney General."

*Discovery Letter*
*USA v. Rosniel Diaz-Bautista*
*Case. No. 2024-cr-20*

> In the event that the prosecution does not stipulate that the Committee's recommendation agreed with the U.S. Attorney's (see, Stipulation Requests, above), we request all correspondence and communications establishing whether "a copy of the Committee's recommendation memorandum" was provided to the U.S. Attorney "when it [was] transmitted to the Attorney General", as required by § 9-10.130, along with all correspondence and communications relevant to whether the U.S. Attorney was provided an opportunity to "respond to the Committee's analysis in a memorandum directed to the Deputy Attorney General," as also required by §9-10.130.[23]

Sincerely,

*s/ Matthew Campbell, Esq.*
Matthew Campbell, Esq.
Federal Public Defender

---

[23]  "If the Committee's recommendation differs from that of the United States Attorney …, the United States Attorney … shall be provided with a copy of the Committee's recommendation memorandum when it is transmitted to the Deputy Attorney General. The United States Attorney or Assistant Attorney General may respond to the Committee's analysis in a memorandum directed to the Deputy Attorney General. The Deputy Attorney General will then make a recommendation to the Attorney General. The Attorney General will make the final decision whether the Government should file a notice of intent to seek the death penalty."