## IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 1:24-0020-WAL-EAH |
| ROSNIEL DIAZ-BAUTISTA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION TO STRIKE
## NOTICE OF INTENT TO SEEK THE DEATH PENALTY

Defendant, Rosniel Diaz-Bautista, hereby moves to strike the government's *Notice of Intent to Seek the Death Penalty* (ECF 54).

### INTRODUCTION

This case involves the unprecedented filing of a *Notice of Intent to Seek the Death Penalty,* (hereinafter "Notice") (ECF 54) against a defendant who was never afforded an opportunity to present mitigation evidence, as required by the Department of Justice's ("DOJ") own death penalty protocols *see* Justice Manual ("JM") §9-10.130. The filing of the *Notice of Intent* occurred on the same day this Court  set as the expiration date of a **fifth** Court-ordered deadline. The defense previously consented to four extensions of the deadline for DOJ to determine if they were seeking the death penalty against Mr. Diaz-Bautista in reliance on the Government's submission of the case to DOJ under an expedited review process that did not require defense mitigation submissions.

Based on these facts, and upon information and belief, the Government filed this *Notice* against the recommendations and wishes of the U.S. Attorney's Office for the Virgin Islands and the Department of Justice's own Death Penalty Review Committee. Upon further information and belief,

the Notice was filed either as a so-called "Protective" Notice, before completion of the DOJ review process (to preserve the government's ability to seek death should it choose to do so), or as an arbitrary, unprecedented and ill-informed decision by the Attorney General that disregarded the recommendations of both the U.S. Attorney's Office and the DOJ Capital Case Review Committee. In either circumstance, the *Notice* is invalid. If it was "protective," then no "attorney for the government" "believe[d] the death penalty was 'justified,'" as required by 18 U.S.C. § 3593 (see, discussion, *infra*, at p. 15). If a final authorization, it is arbitrary, and otherwise improper, and invalid because it was rendered without the procedural safeguard(s) afforded to virtually every other capital-eligible offense since the inception of the Federal Death Penalty Act and DOJ Protocol *to wit*: the "opportunity to present evidence and argument in mitigation." See, JM §9-10.130 (discussed *infra*).

## PROCEDURAL HISTORY

On December 17, 2024, the Government filed a three-count indictment charging Rosniel Diaz-Bautista with using a firearm during a crime of violence resulting in death in violation of 18 U.S.C. § 924(j)(1) (Count One); discharging a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two); and committing first degree murder in violation of Title 14, Virgin Islands Code, Sections 921, 922(a)(1), and 923 (Count Three). ECF 24. The offense and Indictment both occurred during the Biden administration, under Attorney General Garland. Notably, the Indictment did not allege "Special Findings"[1] in support of the death penalty, which means either a decision not to seek death had already been made, or the government violated clear Department of Justice Guidelines for death-eligible cases. See, JM § 9-10.090 (**other than cases where a decision**

---

[1]    "Special Findings" include age over 18, one or more threshold intent factors, and one or more statutory aggravating factors. See, JM § 9-10.090. "[T]he *Ring* decision requires that the 'special findings' necessary to the imposition of the death penalty be first presented to a grand jury and be included in the indictment." *United States v. Cannon*, No. S1-1:01CR 73 HEA, 2004 U.S. Dist. LEXIS 33342, at *65 n.12 (E.D. Mo. Jan. 23, 2004); *United States v. Haynes*, 269 F. Supp. 2d 970, 978-79 (W.D. Tenn. 2003)("the Court finds that the mens rea and aggravating factors enunciated in the FDPA, which if proven increase the maximum punishment of individuals charged with offenses listed at § 3592 from life imprisonment to death, must be charged in an indictment and proven to a jury beyond a reasonable doubt.").

**not to seek death has already been made**, … **the indictment <u>shall</u> allege … special findings …**")(emphasis added). However, because Count One carries the potential penalty of death, the procedures in the DOJ's Death Penalty Protocol should have been strictly adhered to.

At the first status conference after the filing of the indictment on January 15, 2025, the Court exercised its inherent authority to manage its calendar and docket by entering a finding "that in order to ensure that this case proceeds in an orderly and expeditious manner, the United States must file a Notice concerning whether it will seek the death penalty against Mr. Diaz-Bautista within 30 days." (ECF 33). The stated goal of ensuring "orderly and expeditious" proceedings is the very *raison d'être* of the Court's inherent powers. See, *e.g.*, *R & C Oilfield Servs. LLC v. Am. Wind Transp. Grp. LLC*, 45 F.4th 655, 661 (3d Cir. 2022)("Courts possess inherent power to 'manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (federal courts are vested with inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." (citation omitted))[2].

At that status conference, the government acquiesced to this deadline and agreed it was reasonable. At that stage, both parties were in agreement that the deadline provided sufficient time and that it would allow the case to proceed in the "orderly and expeditious manner" contemplated by the Court.

As that initial 30-day court-imposed deadline approached, on February 14, 2025, the government filed an unopposed Motion for Extension of Time (ECF 36), seeking an additional 45 days, which was granted by the Court (ECF 37), extending the deadline to March 31, 2025. On March 28, 2025, as the revised deadline was imminent, the government filed a second unopposed Motion for Extension of Time (ECF 43), seeking an additional 30 days, which was granted by the Court (ECF

---

[2]    Relied upon by Chief Judge Molloy in *Casa Bella Luna, LLC v. Gov't of the United States V.I.*, No. 3:22-cv-0015, 2024 U.S. Dist. LEXIS 177155, at *8 (D.V.I. Sep. 30, 2024).

44), extending the deadline to April 30, 2025. In each instance, the government did not request

mitigation materials, thus reaffirming the case was proceeding under expedited review. The Court

indicated that a decision on this matter was needed before the Court could "set discovery and pretrial

motions deadlines and a trial date" *i.e.,* so that the case could proceed in an "orderly and expeditious

manner". *Id.*

On April 24, 2025, as the newly revised deadline was approaching, the government filed a

third unopposed Motion for Extension of Time (ECF 46), and Amended Motion (ECF 47), seeking

an additional 45 days, which was granted by the Court (ECF 48), extending the deadline to June 16,

2025. The Court again indicated that it was awaiting a decision to "set discovery and pretrial motions

deadlines and a trial date". On June 9, 2025, as the again revised deadline was approaching, the

government filed a fourth unopposed Motion for Extension of Time to File (ECF 50), seeking an

additional 45 days, which was granted by the Court (ECF 52), extending the deadline to July 31, 2025.

The Court established deadlines for the government's decision whether to seek the death

penalty.  The defense, in good faith, agreed to four separate extensions of the authorization deadline

set by the Court. ECF Doc. Nos. 36, 43, 46, 47, and 50.  Because the Government never requested

mitigation materials, it was apparent that the U.S. Attorney's Office recommended an expedited no-

seek recommendation.  The Government reaffirmed this posture as late as June 9, 2025, when it

notified the defense and the Court that the case had been transmitted to the Attorney General's Capital

Case Review Committee (CCRC) for further consideration without requesting mitigation. ECF 50.

See generally, JM, § 9-10.070 ("Expedited Submission Decisions" include any case "where the United

States Attorney … is able to recommend the death penalty not be sought without first receiving input

from defense counsel.")

Inexplicably, on the date of the fifth authorization deadline, July 31, 2025, the Government

arbitrarily filed a Notice of Intent to Seek the Death Penalty. ECF 54.  At no point before that filing

did the government ask for, accept, or invite the submission of mitigation evidence, argument, or background materials relating to Mr. Diaz-Bautista's history, mental health, social background, or any other relevant factors from the defense. The government arbitrarily failed to provide "an opportunity to present evidence and argument in mitigation", as required by the Protocol and provided in every other case where a decision was later made to seek the death penalty. *See*, *e.g.*, JM § 9-10.130 ("No final decision to seek the death penalty shall be made if defense counsel has not been afforded an opportunity to present evidence and argument in mitigation.")

### The Government's Notice Must be Dismissed

We assert that the July 31, 2025 *Notice of Intent* was defective and null and void, as either 1) a "Protective" Notice, filed "before the case has been fully reviewed and the Attorney General has made a final decision whether or not to seek the death penalty"[3], or 2) an unprecedented, improper and arbitrary decision by the Attorney General which ignored the reasoned decisions of both the United States Attorney and the Capital Review Committee, and denied the defense the "opportunity" to present mitigation as required by the DOJ Protocols. On August 19, 2025, almost three weeks after the Notice of Intent, the government for the first time sought a Superseding Indictment alleging Special Findings. See, ECF 64. This was – at bare minimum – a blatant violation of the DOJ Protocol (see, *infra*, at pp. 11-14)

While we believe that the notice is invalid on at least one of the two alternative grounds (and possibly both), we recognize the need for additional discovery to more fully develop our claims. *See*

---

[3]      The Department of Justice has explained to Congress that "… A 'protective death notice' is one that is filed in a case before the case has been fully reviewed and the Attorney General has made a final decision whether or not to seek the death penalty. ln cases in which the Attorney General decides not to seek the death penalty, the protective notice is then withdrawn …"

Statement of Margaret P. Griffey, Chief, Capital Case Unit Criminal Division, United States Department of Justice, Before the Committee on the Judiciary Subcommittee on Crime, Terrorism, and Homeland Security, United States House of Representatives, Concerning the "Death Penalty Reform Act of 2006", Presented on March 30, 2006.

*generally*, Motion to Compel (ECF 95), at 18-19 (citing cases discussing the lesser standard for discovery requests than to prevail on the merits). This motion to strike is based upon information and belief, because to date, the government has refused to provide any information regarding the decision to seek the death penalty against Mr. Diaz-Bautista. (*See* ECF No. 95-5 at 1-2). The motion to compel demonstrates the absolute need for the evidence sought in Mr. Diaz-Bautista's September 30, 2025 discovery demand. (*See generally* ECF No. 95 [hereby incorporated by reference as if reprinted *verbatim* herein]). Once that discovery is provided, Mr. Diaz-Bautista will then be able to supplement this motion to fully demonstrate the invalidity of the government's death notice. For these reasons, Mr. Diaz-Bautista reserves his rights to supplement this motion as well as to file additional motions based upon the discovery demanded via his motion to compel.[4]

The Court must hold that the *Notice of Intent* filed on the final day of the fifth Court imposed deadline is null and void. Courts have the inherent authority to manage their dockets and control the proceedings, which includes the setting and enforcement of a deadline for the filing of a Notice of Intent to Seek the Death Penalty. As Chief Judge Molloy recently held:

> It is well established that district courts' broad, "inherent power to control their dockets, to manage cases effectively, and to 'ensure obedience to their orders,'" extends to setting and enforcing deadlines, including a deadline for filing a Section 3593 notice [of intent].
>
> *United States v. Dangleben*, No. 3:23-cr-0072, 2025 U.S. Dist. LEXIS 180139, at *8-9 (D.V.I. Sep. 15, 2025)

Judge Molloy relied – among other authorities - upon the common-sense principle - that "[t]o hold that a court cannot fix <u>and</u> enforce such pretrial deadlines would undermine the orderly, expeditious and fair administration of criminal justice in ways difficult to fully imagine." *Id.*, at 10.[5]

---

4    Stated alternatively, this motion is filed in concert with the motion to compel, and is not intended as the final word on the asserted invalidity of the government's notice of intent to seek the death penalty.

5    Citing *United States v. Ball*, Criminal Action Nos. 05-100-01 (RWR); 05-100-02 (RWR); 05-100-03 (RWR); 05-100-13 (RWR); 05-100-16 (RWR); 05-100-17 (RWR), 2006 U.S. Dist. LEXIS 119324, *5 (D.D.C. Oct. 19, 2006).

Judge Lewis recently expressed a similar view in *Cole*, that "it is well established that 'a trial judge indisputably has broad powers to ensure the orderly and expeditious progress of trial. This inherent power extends to setting and enforcing deadlines, including a deadline for filing a Section 3593 notice.'" *United States v. Cole*, No. 2023-cr-0016, 2025 U.S. Dist. LEXIS 173926, at *9 (D.V.I. Sep. 7, 2025). See also, *Runza v. Wal-Mart Stores, Inc.*, No. CV 07-4146, 2008 U.S. Dist. LEXIS 6921, at *3 (E.D.N.Y. Jan. 28, 2008)(Noting that "[t]he scheduling of cases and control of its calendar are the most basic rights of th[e] court.")[6]

The government violated the letter, spirit and intent of the Court's inherent authority, exercised in the four-time extended "binding Order", which was set for an undisputably proper purpose - "to ensure that this case proceed[ed] in an orderly and expeditious manner." See ECF 30. The Court's inherent authority in this regard is "broad". *See*, *United States v. Diaz*, 66 F.4th 435, 444 (3d Cir. 2023), ("it is well established that '[a] trial judge indisputably has broad powers to ensure the orderly and expeditious progress of trial.'"), quoting *Bitter v. United States*, 389 U.S. 15, 16, 88 S. Ct. 6, 7 (1967); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 918 (3d Cir. 1992)("[A] trial judge, responsible for the orderly and expeditious conduct of litigation, must have broad latitude to impose … sanction[s] … ""). "More generally stated, the trial judge has the broad discretion to protect the administration of justice from 'abuses, oppression and injustice.'" *Wheeler v. United States*, 640 F.2d 1116, 1118 (9th Cir. 1981)

---

[6] In an earlier case, Judge Lewis had expanded upon this principle:

> It is important to correct counsel's mistaken belief regarding the optional nature of deadlines contained in scheduling orders. A duly entered scheduling order is a binding order of the Court. Litigants and their counsel are not at liberty to ignore court orders at their discretion and, **if they choose to do so, they act at their own peril**.

*Darrah v. Gov't of the V.I.*, Civil Action No. 2009-068, 2011 U.S. Dist. LEXIS 143541, at *12-14 (D.V.I. Dec. 13, 2011)(collecting cases)(emphasis added).

Upon information and belief, the government's *Notice of Intent to Seek the Death Penalty*, filed as the fifth imposed deadline expired, was null and void for one of the reasons discussed *infra*. The Notice was either a "Protective" Notice, filed prior to the completion of the Department's review process (to preserve the government's ability to seek death should it choose to do so), or else an arbitrary, unprecedented and ill-informed decision by the Attorney General to ignore the joint wishes of the U.S. Attorney's Office and the DOJ Death Penalty Committee. To date, the government has refused to provide any information about the process which led to the filing of the Notice of Intent, citing "deliberative process" privilege, and claiming that the Defendant is otherwise not entitled to the information.

As a result, the defense filed a motion currently pending before this Court to compel disclosure of materials related to the deliberative process resulting in the Attorney General's decision to overrule the local United States Attorney's Office and Capital Review Committee and seek the death penalty (ECF 95). The defense seeks the documentation necessary to confirm which of the two alternatives are supported by the evidence. The facts and circumstances alleged in the instant pleading provide additional support for Defendant's entitlement to the requested information, as well as the Court's need for it to properly address the relevant issues. On December 22, 2025, the government sought an unopposed extension of time (ECF 97) to Reply to Defendant's Motion, which was granted by the Court (ECF 98) until January 9, 2026.

### *Alternative #1 - The Notice of Intent may have been a "Protective Notice"*

As explained *supra*, at n. 3, "a 'protective death notice' is one that is filed in a case before the case has been fully reviewed and the Attorney General has made a final decision whether or not to seek the death penalty. In cases in which the Attorney General decides not to seek the death penalty,

the protective notice is then withdrawn ..."[7]  There are several examples of the government filing or threatening to file notices to seek the death penalty before the DOJ review process was completed.

In one case where the court questioned a government request for a continuance, the government threatened that it would bypass its Protocol process and file a Notice of Intent before the review process was completed. See, *United States v. Jackson,* 2006 U.S. Dist. LEXIS 3901, at *8-9 (S.D.N.Y. Jan. 31, 2006)(emphasis added)*(* "... the government took the position … that a failure to grant its request for a continuance would lead to its filing a protective notice of intent to seek the death penalty **without the completion of its internal review process**.")

Under very similar circumstances, such a "Protective" Notice has been stricken as a "hoax". *United States v. Rosado-Rosario,* Criminal No. 97-049 (JAF), 1998 U.S. Dist. LEXIS 673, at *6-7 (D.P.R. Jan. 15, 1998) ("... the court discovered that the … notice of intent to seek the death penalty was, for all purposes, a hoax. The Attorney General of the United States had not certified this death-penalty eligible prosecution and the meeting of counsel with the Death Penalty Review Committee had not been held. The court learned that the filing of the notice of intent to seek the death penalty had been made upon instructions received from a U.S. Department of Justice attorney related to the Death Penalty Review Committee as a protective measure while the determination is made in fact.").

In another case, the Supreme Court of Arizona "reject[ed] as categorically as [it could] the suggestion …" that:

> … if untimely notices of intention to seek the death penalty are to be dismissed without any showing of prejudice to the defense, Arizona prosecutors will reason, "Better safe than sorry" and routinely file notices of intent to seek the death penalty as part of every first degree murder case. . .. If this Court determines that the defense need not show prejudice to have an untimely notice dismissed, the consequence will be that the State will file many more notices of intent to seek the death penalty, and ultimately withdraw most of those notices.

---

[7]        Statement of Margaret P. Griffey, see, n. 3, *supra*

*Holmberg v. De Leon*, 189 Ariz. 109, 112, 938 P.2d 1110, 1113 (1997).

The Court explained that *"*this argument is not fairly reflective of the professionalism the vast majority of prosecutors show day in and day out. No prosecutor should ever file a notice of intent to seek the death penalty **unless in earnest, after the most careful and deliberative consideration of the evidence and law**." *Id.*, at 113 (emphasis added). This did not occur here.

Rather, one of the two possible explanations for how Mr. Diaz-Bautista was authorized for death without ever having an opportunity to present mitigation, in violation of the Protocols, is that the government had not completed its review process by the time the Court's fifth deadline arrived. In this scenario, instead of informing the Court that the government needed more time to complete the review process or inform the Court that the case was no longer proceeding under the expedited review process, the government chose to file a "hoax" notice. The only purpose of this "hoax" notice is to serve as a place holder for the government until it completes its review process. This is a blatant attempt to circumvent the Court's authority to manage its calendar and set enforceable deadlines upon the parties. Particularly in a death penalty case, which will require detailed scheduling orders covering long periods of time. This is necessary because of the magnitude of the subject matter and the inevitable Court resources that a death penalty trial will consume.

Granting the government the ability to file Notices of Intent to seek the death penalty against a defendant without adhering to their own review process would render the Court's authority to set and enforce deadlines meaningless. For months the government represented that the case was submitted to DOJ Capital Case Committee for an expedited review without a defense submission. The only logical set of facts under the government's representation is that the case was submitted for expedited review because the U.S. Attorney's Office, after carefully evaluating the facts, determined that the circumstances of the case did not warrant a sentence of death.

*Alternative #2 - If not "Protective", the Notice was unprecedented, wholly arbitrary, uninformed, and in violation of the government's own Protocols*

If the *Notice of Intent* in this case was not a "Protective" Notice, then it was an improper and arbitrary decision of the Attorney General which ignored the reasoned decision(s) of both the United States Attorney and the Capital Review Committee, while denying the defense the "opportunity" to submit information provided in virtually every other case over the history of the FDPA and DOJ Protocol. This flies directly in the face of numerous government concessions of the **crucial need** for this precise opportunity. See, *e.g.*, *United States v. Baquedano*, 10 CR 20338 (E.D.Mich. 2011) Doc. 124 (government conceding a "miscarriage of justice" would result if defendants did not receive "**a chance to submit mitigation materials** to the United States Attorney's Office …"); *United States v. Bush*, 18-cr-00188-CHB-RSE (WD KY)(Doc. 9)(11/19/18)(government conceding  that "[t]he ends of justice require that prosecutors make wise **and well-informed** decisions on whether to seek the death penalty to guarantee that this ultimate punishment is used only when most appropriate ... [and] the gravity of this decision cautions against a process built for speed rather than for justice."), citing, *United States v. Dominguez-Maqueda*, No. CR 06-86 JB, 2006 WL 1308266, at *5 (D.N.M. 2006) (emphasis added); *United States v. Ball*, 05-cr-00100-PLF (D MD) (Doc. 453) (government conceding its "obligation to make sure that the Attorney General and his staff were advised of **all the relevant facts and policy considerations** in order to assure that the grave and serious decision to pursue capital punishment was given **the full and careful deliberative process it deserves**" and that "it would have been improper to rush such an important decision.").

Unsurprisingly, Courts agree. See, *e.g.*, *United States v. James*, No. 8:18CR333, 2019 U.S. Dist. LEXIS 57942, at *7 (D. Neb. Apr. 4, 2019)("[i]f the [DOJ] Review Committee does not have a defendant's mitigation evidence, then it cannot consider all the appropriate factors relevant to each case ... The Capital Review Committee cannot render a final decision until Defendant is afforded an opportunity to present evidence and argument in mitigation."); *United States v. Medina-Rivera*, 285 F.

Supp. 3d 505, 508 (D.P.R. 2018)(Court explaining that "the time frame during which the appointment of learned counsel may prove to be most crucial … [is] before defendants' submissions to the Capital Review Committee."); *United States v. Gomez-Olmeda*, 296 F. Supp. 2d 71, 87 (D.P.R. 2003) (noting that the DOJ meeting "is of paramount importance in a capital case … [which] can literally lead to a determination of life or death," and striking the Notice of Intent where the case was "rife with procedural pitfalls which deprived Defendant of a full and adequate opportunity to present his mitigation defense in front of the DOJ ..."); *United States v. Littrell*, 478 F. Supp. 2d 1179, 1187 (C.D. Cal. 2007)("The Government … may not simply turn a blind eye to relevant mitigating or aggravating evidence when it decides whether to seek the death penalty."); *Holmberg v. De Leon*, 189 Ariz. 109, at 110 ("A decision to seek the death penalty requires **careful and thoughtful consideration** of our death penalty statute, our cases construing it, and **all evidence relevant to aggravating and mitigating circumstances**.") See also, *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S. Ct. 2978, 2991 (1976)(" … in capital cases the fundamental respect for humanity underlying the Eighth Amendment **requires consideration of the character and record of the individual offender** and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death**.")(all emphasis added)**.

Professor Rory Little, a former DOJ attorney and member of the Capital Case Review Committee, explained a quarter century ago why local recommendations against the death penalty are so important:

> The U.S. Attorney's recommendation carries great, although not dispositive, weight with the Committee. This is particularly so when the recommendation is against seeking death in a death-eligible case. Such "no death" recommendations are almost always accepted, not just because of the traditional autonomy of the U.S. Attorneys, but also because **U.S. Attorneys generally exercise great care in submitting their recommendations and are presumed to know their local communities, jury pools, judges, and the overall strengths and weaknesses of their particular case far better than Main Justice personnel**. (emphasis added)

*Foreword: The Federal Death Penalty: History and Some Thoughts About the Department of Justice's Role*, 26 Fordham Urb. L.J. 347, 349 (1999)

Although the defense is forced to engage in some degree of speculation as to what occurred during the government's decision-making process without the documents and information requested in our motion to compel, it seems clear that both the local U.S. Attorney's Office and the DOJ Capital Case Committee recommended a "no seek" for Mr. Diaz-Bautista before the Attorney General authorized the case for death. We make this assumption because the government represented for months that the case was submitted to the Capital Case Committee for expedited review, without requiring mitigation evidence, and never sought mitigation evidence after the case was submitted to the Capital Case Committee even after the Committee asked the government for other additional information.

Despite the "no seek" recommendations of the US Attorney and the Capital Case Committee, the Attorney General authorized Mr. Diaz-Bautista for death without ever reviewing or considering any mitigation evidence, argument, or background materials relating to Mr. Diaz-Bautista's history, mental health, social background, or any other relevant factors. The government arbitrarily failed to provide "an opportunity to present evidence and argument in mitigation," as required by the Protocol and provided in every other case where a decision was later made to seek the death penalty. *See, e.g.*, JM § 9-10.130

Whether viewed as 1) a "Protective" Notice or as 2) an arbitrary and uninformed decision by the Attorney General as more fully described above, the *Notice* is the type of "fast and loose" conduct which cannot be allowed to stand. "The government cannot be allowed to play 'fast and loose' with decisions involving life and death." *United States v. Cole,* No. 2023-cr-0016, 2025 U.S. Dist. LEXIS 173926, at *69 (D.V.I. Sep. 7, 2025). *See also*, *United States v. Constanza-Galdomez,* 787 F. Supp. 3d 131, 148 (D. Md. 2025) (same). Neither of these Orders were appealed.

13

The "fast and loose" doctrine is designed "to preserve the integrity of the judicial system," *Whiting v. Krassner*, 391 F.3d 540, 544 (3d Cir. 2004), and recognizes "bad faith". *Total Containment, Inc. v. Dayco Prods.*, 177 F. Supp. 2d 332, 337 (E.D. Pa. 2001)("Bad faith means an 'intent to play fast and loose with the court.'") Here, the government acted in bad faith to gain a strategic advantage, after failing to provide Mr. Diaz-Bautista with the "opportunity" provided to virtually every other death-eligible defendant in the history of the FDPA and Death Penalty Protocol. Not only did the government fail to provide him with this opportunity to provide mitigation, but it also misled the Court and the defense into thinking mitigation was not required for DOJ's consideration.

Equally, the *Notice* filed by the government in this case makes a mockery of the Supreme Court's admonition that "… there can be no doubt that the decision to pursue the death penalty is **a critical choice in the adversary process** [and] whether to ask a jury to end the defendant's life is one of the most serious discretionary decisions a prosecutor can be called upon to make." *Williams v. Pennsylvania*, 579 U.S. 1, 11 (2016).

Certainly, when the Court set its initial deadline "in order to ensure that this case proceeds in an orderly and expeditious manner," the Court intended and understood that the government's Notice would be in good faith, after the "proper individualized consideration of the appropriate factors relevant to [the] case"[8], and mean something more than simply "protecting" the right to **later** decide whether to seek death (or reflecting an arbitrary, dramatic and unprecedented break from the authorization process which has existed for over thirty years, through Republican and Democratic administrations alike.)

Rather, to "ensure" that the case proceeded "in an orderly and expeditious manner," it was essential that the government's decision be more than "Protective" or arbitrary and ill-informed.

---

[8]    See, JM, § 9-10.030 ("The overriding goal of the review process is to allow proper individualized consideration of the appropriate factors relevant to each case."). Beyond dispute, a Defendant's mitigation - ignored here - is a substantial part of the "appropriate factors" relevant to the decision.

**Violation of 18 U.S.C. §3593**

Congress chose to expressly limit federal death penalty prosecutions to those cases in which "the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified." 18 U.S.C. § 3593. The "attorney for the government" has been recognized as the prosecutor or the Attorney General. As set forth *supra*, the prosecutor does not believe that a sentence of death is "justified." Nor does the DOJ Committee. To whatever extent the July 31ˢᵗ *Notice* is "Protective", filed "before the case has been fully reviewed and the Attorney General has made a final decision whether or not to seek the death penalty,"[9] section 3593 is violated because no "attorney for the government" believed that the death penalty was "justified". Similarly, if the Attorney General did in fact make a final decision that the death penalty was justified, in contravention of the prosecution's and DOJ Committee's expressed beliefs, and without providing the "opportunity" discussed above, then her "belief" is arbitrary, unprecedented, and legally challengeable as a sham. In either event, the spirit and intent of § 3593 has not been satisfied in the manner envisioned by the Court when exercising its broad inherent powers.

**CJA Guideline §670**

We also note Judicial Conference policy, **enacted at the joint request of DOJ and defense stakeholders**, that the authorization process proceed expeditiously, as the Court's deadline was expressly designed to achieve. The CJA Guidelines "represent the guidelines of the Judicial Conference of the United States," which is "the policymaking body for the federal courts." Guideline § 670 addresses scheduling matters, including "the submission by the defendant to the U.S. Attorney of any reasons why the government should not seek the death penalty". *Guide to Judiciary Policy*, Vol. 7A, § 670, at (b). Per the Guideline, "[t]he schedule should allow reasonable time for counsel for the parties to discharge their respective duties with respect to the question of whether the death penalty

---

[9]    See Congressional testimony explaining what a "Protective" Notice is, at n. 3, *supra*.

should be sought," and "should be flexible and subject to extension for good cause at the request of either party …" While no such deadline was set, Guideline § 670 reinforces the defense submission as an essential aspect of the authorization process, which was wholly ignored here by the government. Guideline § 670(B)(1).

Although certain District Courts have taken the view that Guideline § 670 is advisory only, and not binding, we note that in the District of the Virgin Islands, the Court "must comply with Guide, Vol. 7A, approved by the Judicial Conference of the United States or its Committee on Defender Services. …" See, Virgin Island's *Criminal Justice Act Plan, revised 2022*. **Guideline § 670 is contained within Guide, Vol. 7A, and thus binding here**. Even without the mandatory language of the local CJA Plan, however, the Guideline is "at the very least entitled to respectful consideration." *Hollingsworth v. Perry*, 558 U.S. 183, 193 (2010). "In other words, when the Judicial Conference promulgates a policy, that policy, even if not binding in the strictest sense, is not lightly to be discounted, disregarded, or dismissed." *In re Sony BMG Music Entm't*, 564 F.3d 1, 6 (1st Cir. 2009)

It is also significant that the Department of Justice took an active role in the promulgation of § 670 - it "was developed jointly by Department of Justice (DOJ) staff and defender services representatives, based upon discussions" led by the Honorable John Gleeson, then-Chair of the Judicial Conference's Committee on Defender Services. Indeed, "[s]enior members of the DOJ's Criminal Division and members of the capital defense community" participated. *Memorandum*, John Gleeson, March 25, 2008.

**Prejudice**

The prejudice to the defense is profound. For example, effective advocacy by Learned Counsel leading up to and during the DOJ meeting "may well make the difference as to whether the Attorney General seeks the death penalty (and perhaps as to whether defendant lives or dies)." *In re Sterling-Suarez*, 306 F.3d 1170, 1174 (1st Cir. 2002). Here, for all practical purposes, there was a complete

denial of Learned Counsel for the investigation, development and presentation of mitigation and other reasons why the death penalty should not be sought. When faced with a complete denial of counsel during a "critical stage" of the proceedings, prejudice is presumed. See, *e.g.*, *Baxter v. Superintendent Coal Twp. Sci*, 998 F.3d 542, 548 n.7 (3d Cir. 2021); *Blatch v. Rivello*, No. 21-4879, 2024 U.S. Dist. LEXIS 240396, at *21 (E.D. Pa. June 28, 2024).

Another related example of prejudice is found in the **statutory** right to effective assistance of counsel based upon 18 U.S.C. § 3005. See, *e.g.*, *United States v. Monteiro*, 2005 U.S. Dist. LEXIS 39121, 15-16 (D. Mass. Oct. 31, 2005) ("[Under 3005, learned counsel is to be appointed reasonably soon after the indictment and **prior to the time that submissions are to be made to persuade the Attorney General not to seek the death penalty**…) (emphasis added) *See also United States v. Medina-Rivera*, 285 F. Supp. 3d 505, 508 (D.P.R. 2018) ("… specifically-qualified counsel constitutes the greatest block to a fast switch to a death penalty case")(quoting *Pena-Gonzalez*, 62 F. Supp. 2d at 358). Through no fault of his own, without "good cause," Mr. Diaz-Bautista was denied this statutorily-required advocacy and "block to a fast switch to a death penalty case.". *See*, *e.g.*, *United States v. Dangleben*, No. 3:23-cr-0072, 2025 U.S. Dist. LEXIS 93951, at *11-12 (D.V.I. May 16, 2025); *United States v. Blankenship*, 548 F.2d 1118, 1121 (4th Cir. 1976)("a defendant who requests additional counsel [under 3005] is **presumed by the statute to need the second attorney in order to prepare an effective defense** …")(emphasis added).

Here the government's unjustified delay through four separate extensions of time totaling six months constitutes cognizable prejudice.[10] We seek here not dismissal of the Indictment (the remedy

---

[10] Another form of prejudice involves "the unique anxiety and concern that comes with the looming prospect of the death-penalty", which is "a prejudice not easily measurable and one absent in the majority of criminal cases." *United States v. Green*, 2018 U.S. Dist. LEXIS 21074 *; 2018 WL 786185 (2018).  In affirming dismissal of the *Green* Indictment on Speedy Trial grounds, the Second Circuit found it significant that the defendants "… were forced … to worry over whether the government would seek not just their liberty, but their lives. The magnitude of the anxiety and concern incurred by this decision is great, and this consideration weighs heavily in our determination that the delay here prejudiced Defendants-Appellees." *United States v. Black*, 918 F.3d 243, 265 (2d Cir. 2019).

imposed and upheld in *Green/Black*), but the lesser sanction of striking the death *Notice*. See generally, *United States v. Lopez-Matias*, 522 F.3d 150, 154 n.9 (1st Cir. 2008)("Dismissal of the Notice is not as extreme as dismissal of an indictment."); *Id.*, at 158 ("when the stakes are so high, a smaller quantum of prejudice may justify a sanction. And, as discussed above, striking the Notice is not quite as serious as dismissing the indictment altogether, and so perhaps still less prejudice is required. We are also mindful that the mere possibility of a death sentence has serious effects. It changes the bargaining calculus in plea negotiations, alters the structure and procedure of the trial itself, and may represent a shift in the course of events that is impossible to undo")(citation omitted).

Upon information and belief, Mr. Diaz-Bautista has suffered these, and likely other, forms of prejudice resulting from the government's invalid filing of its notice of intent to seek the death penalty. Once discovery is provided as requested in his motion to compel (*see* ECF No. 95), Mr. Diaz-Bautista will be in a position to fully brief the multiple forms of prejudice he has and will suffer from the circumstances surrounding the filing of the government's NOI. Mr. Diaz-Bautista thus reserves his right to supplement this motion by filing comprehensive briefing on prejudice and other related issues once the motion to compel discovery is resolved and additional discovery is provided.

## CONCLUSION

The government agreed to a reasonable *Notice* deadline. Both the Court and the defense relied upon that date, to their detriment. Due to the government's "fast and loose" approach to the deadline(s) set and agreed by the parties, four separate deadlines came and went (**totaling almost 6 months of delay)** with at least an implied promise that the expedited authorization process was proceeding in good faith. Under these circumstances, both the Court and the defense were entitled to more upon the fifth deadline than - without any defense "opportunity" to present information or argument – a Notice that "we **might** seek the death penalty, we don't really know yet." This is the essence of playing "fast and loose" and bad faith.

Based upon the foregoing, the Court should exercise its broad inherent authority and strike the *Notice of Intent* filed on July 31, 2025 as null and void, and in violation of the spirit and intent of the Court's properly imposed deadline(s), which sought "to ensure that this case proceeds in an orderly and expeditious manner." For reasons wholly unrelated to Mr. Diaz-Bautista, and attributable solely to the government's apparent and unjustified ambivalence to the Court's deadline(s), the case has not proceeded in such a manner.

"As far back as *Marbury [v. Madison]*, the Supreme Court has emphasized that where there is a right, there must be a remedy." *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 U.S. Dist. LEXIS 262265, at *55 (C.D. Cal. Dec. 18, 2025). Under the unprecedented and extraordinary facts and circumstances *sub judice*, that remedy is striking the Notice of Intent, *with prejudice*.


Dated: January 8, 2026                                    Respectfully submitted,

                                                          MATTHEW CAMPBELL
                                                          FEDERAL PUBLIC DEFENDER

                                                          *s/ Matthew Campbell*
                                                          1336 Beltjen Road, Suite 202
                                                          Charlotte Amalie, VI 00802
                                                          Tel:  (340) 774-4449
                                                          E-mail: Matt_Campbell@fd.org

                                                          *s/John A Diaz, Esq.*
                                                          Law Office of John A. Diaz
                                                          225 Broadway, Suite 715
                                                          New York, NY 10007
                                                          Tel: (212) 227-8208
                                                          Email: johnadiazlaw@gmail.com