**DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF SAINT CROIX**

UNITED STATES OF AMERICA    :

    v.          :        **CRIMINAL NO. 1:24-20**

ROSNIEL DIAZ-BAUTISTA,    :        **(JUDGE MANNION)**

Defendant.  :

**<u>MEMORANDUM</u>[1]**

Pending before the Court is Rosniel Diaz-Bautista's ("Defendant") (1) "motion to compel disclosure of materials related to the deliberative process resulting in the Attorney General's decision to overrule the United States Attorney's Office and Capital Review Committee and seek the death penalty" (**Doc. 95**)[2]; (2) "motion to strike notice of intent to seek the death penalty" (**Doc. 99**); and (3) "amended second motion to compel disclosure of materials related to the deliberative process resulting in the filing of a notice

---

[1] This case was transferred to the undersigned on February 20, 2026.

[2] It is unclear to the court whether the Attorney General "overrule[d]" the United States Attorney and/or the Capital Review Committee as alleged by the defendant in his motion. The accuracy of that allegation however would not change the court's determination of this legal issue.

of intent to seek the death penalty" (**Doc. 129**).[3] For the reasons stated herein, the motions will be **DENIED**.

## I.    BACKGROUND

On December 17, 2024, a federal grand jury sitting in the District of the Virgin Islands returned an indictment charging Defendant with: (1) use of a firearm during a crime of violence resulting in death, in violation of 18 U.S.C. §924(j)(1), which is a death-penalty-eligible offense; (2) discharge of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §924(C)(1)(a); and (3) first degree murder, in violation of 14 V.I.C. §§921, 922(a)(1), and 923. (Doc. 24). The charges arise from an incident which occurred in the early morning hours of September 8, 2024, wherein the Government alleges that Defendant gunned down Indierra Morales ("Decedent") as she sat in her black Acura parked in front of Alba's Bar and Restaurant in Frederiksted. (Doc. 1).

On December 19, 2024, Defendant filed an unopposed motion to designate the case as complex, which was granted – resulting in a

---

[3] Defendant filed an original motion to compel (**Doc. 128**). However, on the same day, Defendant filed an amended motion to compel, indicating that it is "intended to replace the earlier draft erroneously filed at ECF No. 128." (Doc. 129). Therefore, Defendant's first motion to compel (Doc. 128) will be dismissed as moot.

continuance of discovery, deadlines, and the trial date. (Docs. 26, 28). On January 15, 2025, the Court ordered the Government to indicate whether it intended to seek the death penalty against Defendant by February 14, 2025. (Doc. 33). The Court subsequently granted the Government's unopposed extensions of that deadline to March 31, 2025, June 16, 2025, and July 31, 2025. (Docs. 37, 48, and 52). On July 31, 2025, the Government filed a notice of intent to seek the death penalty ("NOI"). (Doc. 54). The instant motions before the Court followed and are now ripe for review.

### A. Defendant's "Motion to Compel Disclosure of Materials Related to the Deliberative Process Resulting in the Attorney General's Decision to Overrule the United States Attorney's Office and Capital Review Committee and Seek the Death Penalty," (Doc. 95).

On December 15, 2025, Defendant filed a motion to compel disclosure of materials related to the deliberative process allegedly resulting in the Attorney General's decision to overrule the United States Attorney's Office and Capital Review Committee and seek the death penalty. (Doc. 95). In his motion, Defendant requests that the Court compel the Government to disclose all materials relevant and essential to the deliberative process for the Attorney General's decision to seek the death penalty. *Id.* Defendant argues that the Attorney General may not seek the death penalty until defense counsel has been afforded an opportunity to present evidence in

mitigation to the decision-makers. *Id.* at 5. As such, Defendant argues that because the Government did not invite Defendant to provide mitigation materials, he believed the Government was making an expedited, "no-seek" recommendation. *Id.* at 3. Therefore, Defendant concludes that 1) the United States Attorney and the Capital Review Committee submitted a "no-seek" memorandum but the Attorney General reversed course, or 2) the United States Attorney and/or the Capital Review Committee made a "seek" recommendation without affording Defendant the opportunity to provide mitigation. *Id.* at 6.

The Government filed its brief in opposition on January 9, 2026. (Doc. 101). In its brief, the Government argues that it denied Defendant's original discovery request from September 30, 2025, advising Defendant that his request was irrelevant and beyond the scope of Fed.R.Crim.P. 16(a)(2), which does not authorize discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government. *Id.* at 9. The Government also argues that Defendant has no right to participate in the process of deciding whether to pursue capital punishment, and that Defendant's discovery request is merely a fishing expedition. *Id.* at 3. Even if Defendant was entitled to his requested

discovery, the Government believes that the materials are protected by the deliberative process privilege. *Id.* at 16.

Defendant submitted a reply to the Government's brief on January 29, 2026. (Doc. 113). In it, Defendant argues that he merely seeks to determine whether the decision to authorize the death penalty was arbitrary, discriminatory, or unlawful. *Id.* at 1. Moreover, Defendant wishes to determine why the Attorney General departed from an alleged uniform practice of requiring the prosecutor to seek mitigating evidence from defense counsel. *Id.* at 3.

**B. Defendant's "Motion to Strike Notice of Intent to Seek the Death Penalty," (Doc. 99).**

On January 8, 2026, Defendant filed a motion to strike the NOI. (Doc. 99). In it, Defendant argues that the Court should dismiss the NOI because (1) the NOI was either a "Protective" Notice, filed prior to the completion of the Department's review process to preserve the Government's ability to seek the death penalty, or (2) the Attorney General's decision to seek the death penalty was an arbitrary, unprecedented, and ill-informed decision which ignored the wishes of the United States Attorney's Office and the Attorney General's Capital Review Committee. *Id.* at 8.

On January 22, 2026, the Government responded, arguing that Defendant's claims depend on the notions that Department of Justice

("DOJ") had not completed its internal capital review process, and that mitigating facts were not considered. (Doc. 106 at 3, 11). However, "[D]efendant's case was submitted to the Capital Case Section and reviewed, and the decision to seek the death penalty was made by the Attorney General in advance of the NOI deadline." *Id.* at 4. The Government argues that the decision to seek the death penalty rests solely with the Attorney General, and her decision was not arbitrary. *Id.* at 5. The Government thereafter attached a July 30, 2025, letter from Attorney General Pamela Bondi ("Attorney General Bondi") to United States Attorney Adam Sleeper ("Attorney Sleeper"), directing Attorney Sleeper to seek the death penalty against Defendant. *Id.*, Ex. A.

**C. Defendant's "Second Motion to Compel Disclosure of Materials Related to the Deliberative Process Resulting in the Filing of a Notice of Intent to Seek the Death Penalty," (Doc. 129).**

On March 5, 2026, Defendant filed a second motion to compel disclosure of materials related to the deliberative process resulting in the filing of the NOI. (Doc. 129). In it, Defendant argues that the need for discovery outweighs any governmental interest in secrecy. *Id.* at 5. Defendant claims that by providing the letter from Attorney General Bondi certifying that the Government should seek the death penalty, the Government waived its executive privilege regarding the NOI. *Id.* at 4.

- 6 -

Defendant requests that the Court compel the Government to turn over a "privilege log" to determine what documents are within the scope of the waiver. *Id.* at 14-16.

The Government filed its brief in opposition on April 3, 2026. (Doc. 139). In its brief, the Government argues that it did not waive any confidentiality, as Attorney General Bondi's letter was not deliberative, and even if it was, any waiver of privilege would apply to the letter alone and would not implicate any other document covered by the privilege. *Id.* at 4. The Government argues that Defendant is demanding access to privileged documents without any legal justification. *Id.* at 3. Additionally, the Government claims that the letter was not "pre-decisional," but instead a final decision. *Id.* at 6. Additionally, the Government refers to both §9-10.050 of the Justice Manual and Fed.R.Crim.P. 16(a)(2), arguing that both preclude Defendant from discovering such confidential, privileged information. *Id.* at 13.

## II.    LEGAL STANDARD

The Federal Death Penalty Act, 18 U.S.C.§§ 3591–3599, authorizes the death penalty for defendants guilty of certain homicides, if an aggravating circumstance makes a death sentence neither "excessive" nor "grossly disproportionate." *United States v. Savage*, 970 F.3d 217, 288 (3d Cir. 2020)

(quoting *Coker v. Georgia*, 433 U.S. 584, 592 (1977). "[I]n capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner." *United States v. Cole*, 799 F. Supp. 3d 438, 441 (D.V.I. 2025) (quoting *Illinois v. Somerville*, 410 U.S. 458, 461 (1973) (internal citations omitted); *see also* Cole, 799 F. Supp. 3d at 469 (quoting *Strickland v. Washington*, 466 U.S. 668, 704 (1984) (Brennan, J., concurring in part and dissenting in part) ("[W]e have consistently required that capital proceedings be policed at all stages by an especially vigilant concern for procedural fairness and for the accuracy of factfinding[.]")).

## III.    DISCUSSION

If the Government intends to seek the death penalty, it must file a pretrial notice "stating that . . . the circumstances of the offense" justify a capital sentence and specifying which "aggravating factor or factors" it "proposes to prove." *Savage*, 970 F.3d at 288 (quoting 18 U.S.C. §3593(a)). The FDPA identifies sixteen statutory aggravating factors for homicide, and the government can propose additional non-statutory aggravators tailored to the offense. *See* §3592(c). The FDPA also identifies seven mitigating factors, plus a catchall provision for any "factor[ ] in the defendant's background, record, or character or any other circumstance of

the offense that mitigate[s] against imposition of the death sentence." §3592(a).

Defendant's motions raise the following questions before the Court: (1) whether Defendant is entitled to participate in the Government determination to file a NOI; (2) whether Defendant is entitled to discovery related to the Government's decision to file a NOI. The Court addresses each issue in turn and holds that the bases for Defendant's motions fail as a matter of law.

## A. Defendant's Participation in the Deliberative Process

The Attorney General of the United States ultimately decides whether the Government will seek the death penalty. *Mitchell v. Forsyth*, 472 U.S. 511, 520 (1985). "[A]ll functions of agencies and employees of the DOJ are vested in the Attorney General[.]" 28 U.S.C. §506. The Attorney General "shall supervise all litigation to which the United States . . . is a party and shall direct all United States Attorneys . . . in the discharge of their respective duties[.]" 25 U.S.C. §519. The Justice Manual explicitly states:

> [T]he Attorney General will make the final decision whether to seek the death penalty. The Attorney General will convey the final decision to the United States Attorney or Assistant Attorney General in a letter directing him or her to seek or not seek the death penalty.

- 9 -

J.M. §9-10.050. Additionally:

> The DOJ Manual itself states that its content "provides only internal Department of Justice guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." [J.M.] §1–1.100. The Sixth Circuit, relying upon this language, has held that **the Manual does not create any enforceable procedural or substantive rights in defendants.** *United States v. Myers,* 123 F.3d 350, 355–56 (6th Cir.1997) (holding that a violation by the DOJ of its internal operating procedures, on its own, does not create an enforceable right).

*United States v. Shakir*, 113 F. Supp. 2d 1182, 1187 (M.D.Tenn. 2000) (emphasis added).

Defendant argues that he should have been invited to provide mitigating evidence to the Government prior to its decision to file a NOI. (Docs. 95 at 3 and 99 at 5). To support this claim, Defendant cites a provision of the Justice Manual which states that "[n]o final decision to seek the death penalty shall be made if defense counsel has not been afforded to present evidence and argument in mitigation." (Doc. 95 at 3 (quoting J.M. §9-10.103)). However, the Justice Manual likewise recognizes the Attorney General's statutory authority to permit exceptions. J.M. §9-10.230; 28 U.S.C. §519. The Justice Manual does not confer upon Defendant any rights which

are enforceable at law, including any right to be consulted for mitigating evidence. *Shakir*, 113 F. Supp. 2d at 1187.

Any argument suggesting that Defendant is entitled to relief based upon the Government's alleged failure to comply with Justice Manual §9-10.103 fails. However, even if the Court found that the Government failed to comply with the Justice Manual insofar as it should have expressly invited Defendant to submit mitigating evidence, this finding cannot be a basis to strike the NOI. *See United States v. Lopez-Matias*, 522 F.3d 150, 156 (1st Cir. 2008) (holding that a violation of the Justice Manual does not give rise to the striking of a NOI, stating: "We are reluctant to interfere with internal prosecutorial measures by elevating internal guidelines to the level of a guarantee to defendants. Our reluctance stems from a respect for the separation of powers, and also from practical concerns.").

Defendant has failed to provide the Court with any statutory right which entitles him to participate in the NOI decision by submitting mitigating evidence. The FDPA does not establish that Defendant may participate on the Government's decision to seek the death penalty. 18 U.S.C. §3593(a). Without offering a scintilla of evidence, Defendant's claim hinges on the baseless notion that because he did not submit mitigating evidence, the Government did not consider mitigating evidence. This Court declines to hold

- 11 -

that the Government violated its duty to consider the statutory factors, especially when it assured the Court otherwise. (Doc. 106); *see* 18 U.S.C. §3592.

Defendant asks this Court to strike the Government's NOI. (Doc. 99). Not only may we not interfere with the Government's executive and prosecutorial decision to seek the death penalty for the aforementioned reasons, but Defendant has failed to exhaust other remedies which could achieve the same relief. *Shakir*, 113 F. Supp. 2d at 1191. Multiple times, the Government has reminded and encouraged Defendant to utilize the §9-10.160(b) procedure outlined in the Justice Manual, relating to a defendant's ability to seek withdrawal of a NOI. *See* (Doc. 129-3). Defendant has declined to seek such a remedy.

Based on the facts that the decision to file an NOI rests with the Attorney General, Defendant failed to provide the Court with any statutory right requiring the Government to invite him to participate in the NOI process, and there is no evidence to suggest that the Government did not consider mitigation in its NOI determination, the Court holds that the Government was not required to expressly invite Defendant to submit mitigating evidence prior to its decision to file the NOI.

## B. Discovery Rights

Our inquiry now turns on whether Defendant is entitled to discovery based upon the Government's "deliberative process" to file a NOI. As a preliminary matter:

> [The discovery] rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

Fed.R.Crim.P. 16(a)(2). Under Rule 16(a)(2), a defendant "may not examine Government work product in connection with his case." *United States v. Armstrong*, 517 U.S. 456, 463 (1996).

The Justice Manual emphasizes the confidentiality of the Government's decision to file a NOI:

> **The decision-making process preliminary to the Department's final decision is confidential.** Information concerning the deliberative process may only be disclosed within the Department and its investigative agencies as necessary to assist the review and decision-making process . . . The scope of confidentiality includes, but is not limited to:

- 13 -

> (1) the recommendations of the United States Attorney's Office or Department component, the . . . Capital Review Committee, . . . the Deputy Attorney General, the Capital Case Section, and any other individual or office involved in reviewing the case; (2) a request by a United States Attorney or Assistant Attorney General that the Attorney General authorize withdrawal of a previously filed [NOI]; (3) a request by a United States Attorney or Assistant Attorney General that the Attorney General authorize not seeking the death penalty pursuant to the terms of a proposed plea agreement; and (4) the views held by anyone at any level of review within the Department. **In no event may the information identified in this paragraph be disclosed outside the Department and its investigative agencies without prior approval of the Attorney General.**

J.M. §9-10.050 (emphasis added).

The Middle District of Tennessee contemplated whether defendants are entitled to "pre-authorization discovery" regarding the Government's death penalty decision. *See Shakir*, 113 F. Supp. 2d at 1182. In *Shakir*, the court held that it could not interfere with a matter of executive agency discretion. *Id.* at 1186. It found that:

> The decision to seek the death penalty and the issuance of the [NOI] pursuant to the Protocol, are "essentially a prosecutor's charging decision." [*United States v.*] *McVeigh,* 944 F. Supp.

[1478,] 1484 [(D.Colo.1996)]. Such prosecutorial discretion to make charging decisions "has repeatedly and consistently been held to be presumptively unreviewable by the courts." *Nichols* [*v. Reno*], 931 F. Supp. [748,] 751 [(D.Colo)] [(internal citations omitted)]. Moreover, Congress, in passing 18 U.S.C. § 3593, did not dictate any restrictions or procedures regarding the process by which the government reaches its decision of whether to seek the death penalty, nor did Congress make any provisions for judicial review of such decision or for the defendant's participation in the certification process. 18 U.S.C. § 3593.

*Id.* at 1187. The court declined to grant pre-authorization discovery pertaining to the Government's decision to seek the death penalty. *Id.* at 1189. "[O]nly those internal agency regulations which affect rights granted by law are subject to limited judicial review." *Id.* The "Court is not free to re-interpret internal DOJ policy and impose that interpretation upon an executive agency." *Id.* at 1190.

Here, the Government argues that Defendant's "motion relies on circular reasoning: it asserts, based on [D]efendant's lack of participation in the Death Penalty Protocol, a need for government documents to confirm that he did not participate in the Death Penalty Protocol." (Doc. 101 at 4). The Court agrees with the Government's characterization of Defendant's sought discovery. Finding the *Shakir* Court's rationale persuasive, this Court

declines to grant Defendant discovery with respect to the Government's deliberative process, as it may not interfere with the Government's executive agency discretion. *Shakir*, 113 F. Supp. 2d at 1186.

The Court notes that even if Defendant had a right to the requested discovery, the discovery contemplates privileged material to which Defendant is not entitled. One form of executive privilege, the deliberative process privilege, shields from disclosure documents "reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 334 (D.D.C. 1966)). These documents are the very discovery Defendant seeks.

Defendant argues that the Government waived its executive privilege because it disclosed a letter from Attorney General Bondi stating that the Government is directed to proceed with the NOI. (Doc. 129 at 9-11); *see also* (Doc. 106, Ex. A). However, Defendant fails to articulate how the letter contained privileged information such that the Government waived its executive privilege. Attorney General Bondi's letter reads:

> You are authorized and directed to seek the death penalty against [Defendant].

> As described in Justice Manual §9-10.160, you may not enter into a plea agreement that requires withdrawal of the notice of intention to seek the death penalty without the prior approval of the Attorney General.

(Doc. 106, Ex. A).

A plain reading of this letter indicates that Attorney General Bondi made a final decision with respect to Defendant's NOI – not that the Government was still deliberating. The privilege that applies to deliberative documents does not apply to decisional documents, like Attorney General Bondi's letter. *See United States Fish and Wildlife Serv. v. Sierra Club, Inc.,* 592 U.S. 261, 268 (2021) ("This [privilege] does not apply, of course, to documents that embody a final decision, because once a decision has been made, the deliberations are done. The privilege therefore distinguishes between predecisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not.").

- 18 -

## IV.   CONCLUSION

For the aforementioned reasons, Defendant's motions will be **DENIED**.

An appropriate order shall be issued.

s/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States District Judge**

**DATE: April 27, 2026**
24-20-01