**DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF SAINT CROIX**

UNITED STATES OF AMERICA      :

  v.                                          :           **CRIMINAL NO. 1:24-20**

ROSNIEL DIAZ-BAUTISTA,         :           **(JUDGE MANNION)**

    Defendant.   :

**MEMORANDUM**

Presently before the Court is Rosniel Diaz-Bautista's ("Defendant") "motion for reconsideration" of the Court's memorandum and order (Docs. 159, 160) denying Defendant's motions to compel disclosure of the deliberative process of the Government's decision to file a notice of intent to seek the death penalty ("NOI") (Docs. 95, 129), and motion to strike the Government's NOI (Doc. 99). (**Doc. 185**). For the reasons stated herein, the motion will be **DENIED**.[1]

To prevail on a motion for reconsideration, Defendant must show: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the

---

[1] In the Court's consideration of the instant motion, it reviewed Defendant's motion (Doc. 185), Defendant's brief in support (Doc. 186), the Government's response in opposition (Doc. 201), and Defendant's reply (Doc. 203).

need to correct clear error of law or fact to prevent manifest injustice." *Butler v. Pa. Bd. Of Probation & Parole*, 613 Fed.Appx. 119, 125 (3d Cir. 2015). Motions for reconsideration may not be used as a means to reargue matters, nor present new arguments that could have been previously raised. *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 73 F.Supp.3d 488, 491 (M.D.Pa. 2014).

In support of his motion, Defendant raises essentially no new arguments. Instead, he reasserts the same arguments he made initially, under the guise that because the Court did not find such arguments meritorious in the first instance, the Court "clearly erred" or must have acted with "*manifestly unjust* clear error." (Doc. 185) (emphasis added). Indeed, Defendant fails to cite one, singular case to support such an assertion. Nonetheless, the Court addresses each of his arguments.

First, Defendant argues that "[t]he Court clearly erred in making the factual finding that the [G]overnment considered mitigating evidence during its deliberative process leading to the filing of the [NOI.]" (Docs. 185 at 1, 186 at 1-4). As Defendant conceded, mitigating evidence is "exceedingly broad." *Id.* at 2-3. Nonetheless, Defendant baldly asserts that because the Government did not explicitly delineate that it considered mitigating evidence, the Court erred by allegedly making a factual finding that it did.

- 2 -

The Court disagrees with Defendant's characterization of its factual findings. The Court merely declined to adopt Defendant's assertion that because the Government did not ask Defendant for mitigating evidence, it did not consider mitigating evidence. (Doc. 159 at 11-12). By way of further rationale, 18 U.S.C. §3592 states that:

> In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider **any** mitigating factor, including the following:
>
> (1) Impaired capacity.--The defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform conduct to the requirements of law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge.
> (2) Duress.--The defendant was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge.
> (3) Minor participation.--The defendant is punishable as a principal in the offense, which was committed by another, but the defendant's participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge.
> (4) Equally culpable defendants.--Another defendant or defendants, equally culpable in the crime, will not be punished by death.

(5) No prior criminal record.--The defendant did not have a significant prior history of other criminal conduct.

(6) Disturbance.--The defendant committed the offense under severe mental or emotional disturbance.

(7) Victim's consent.--The victim consented to the criminal conduct that resulted in the victim's death.

(8) Other factors.--Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence.

18 U.S.C. §3592(a) (emphasis added). While it may be true that consulting Defendant on *some* mitigating factors such as numbers one, three, and six may have been beneficial, the remaining five factors could have easily been considered by the Government with no consultation from Defendant at all. Nonetheless, even in his motion for reconsideration, Defendant has not offered one morsel of mitigating evidence which would support why his claim, if true, would have changed the outcome of the Government's decision to file a NOI. Using Defendant's same logic, then, "the only remaining explanation . . . is that [he] has none." (Doc. 186 at 4). The Court otherwise defers to its detailed memorandum as the basis for its ruling.

Defendant next argues that "[t]he Court clearly erred in concluding that any mitigating evidence considered by the Department of Justice is protected

from disclosure by the deliberative process privilege[.]" (Docs. 185 at 1, 186 at 4-5). Defendant, once again, mischaracterizes the Court's ruling, stating that "it was error to hold that factual information considered during the deliberative process is covered by the deliberative process privilege." (Doc. 186 at 5). The Court never made such a ruling. Interestingly, Defendant acknowledges that there is a wealth of mitigating evidence which would not be considered "deliberative," but factual in nature, and that the Government would be required to turn over such evidence. *Id.* In the very same brief, Defendant states: "As [Defendant] presumes that the [G]overnment is not willfully violating its constitutional and statutory obligations as well as the explicit terms of this Court's order [pursuant to *Brady* and *Giglio*], the only remaining explanation for the [G]overnment's failure to turn over mitigating evidence is that it has none[.]" *Id.* at 4. Defendant's arguments therefore conflict with one another.

Nonetheless, even if, *arguendo*, the Government had "factual information" which it wrongfully withheld from Defendant, it is curious that Defendant participated in submitting a joint supplement with the Government regarding satisfactory discovery exchanges. (Doc. 187). What is more, Defendant accuses this Court of ignoring one of his many arguments in the underlying motions: that the Government waived its deliberative process

- 5 -

privilege. (Doc. 186 at 5). The Court invites Defendant to refer to its memorandum once more, where it explicitly delineates why disclosing the Attorney General's letter did not constitute a privilege waiver. (Doc. 159 at 16-17). This Court otherwise defers to its memorandum for its findings with respect to the deliberative process privilege.

Defendant next argues that "[t]he Court clearly erred in applying a heightened burden as to [his] discovery requests[.]" (Docs. 185 at 1-2, 186 at 5-6). Nowhere in the Court's memorandum did it employ any "heightened" or "fundamentally unfair" standard to Defendant's discovery requests. Defendant fails to acknowledge the many reasons, including privilege, why he is not entitled to the requested discovery. Defendant claims that "there is a lower burden to establish a defendant's entitlement to discovery in support of a claim, than to prevail on the claim itself[.]" (Doc. 186 at 6). While this may be true to the extent it applies to discovery supporting the Government's theory of a case, Defendant fails to cite any legal authority supporting that it applies to discovery of the Government's decision to file an NOI. In his underlying motions and now the instant motion, it is difficult to discern anything other than that Defendant requests this Court to endorse a fishing expedition, which it declines to do.

Defendant next argues that "[i]t was manifestly unjust to deny [his] motion to strike the NOI without allowing him to reply to the [G]overnment's opposition[.]" (Docs. 185 at 2, 186 at 6-7). Defendant filed his "motion to strike" on January 8, 2026. (Doc. 99). The Government filed its response on January 26, 2026, wherein it disclosed the NOI determination later. (Doc. 107). Because Defendant believed this disclosure constituted a waiver of any claim of privilege for the sought discovery, Defendant filed a "motion to stay litigation of motion to strike pending resolution of motion(s) to compel" on the same day. (Doc. 108, 186-1 at 6). The Court held a status conference on the motion to stay on January 29, 2026. (Doc. 111). At that status conference, the parties asked the Court to delay ruling on the motion to strike until it ruled on the motions to compel. (Doc. 186-1 at 35). The Court took the request under advisement, which remained pending at the time this Court issued its memorandum for the underlying motions. *Id.* at 37; (Doc. 159). The parties' request was thus presumptively denied.

Defendant argues that he was denied the opportunity to reply to the Government's response to his notice to strike. (Doc. 186 at 6-7). Per the Federal Rules of Criminal Procedure, and the Virgin Islands District local rules, Defendant does not have an automatic right to reply to the Government's response. *See* Fed.R.Crim.P.; V.I.D. Crim. R. (2026).

- 7 -

Defendant's motion is devoid of any legal authority to support the proposition that he was entitled to file a reply to the Government's response prior to ruling upon his motion to strike. Also, nothing prevented Defendant from filing a response during the months that the request to stay remained pending. Moreover, any argument Defendant would have presented in response to the Government's response is likely encompassed in the instant motion.

Defendant next argues that "[t]he Court clearly erred in upholding a privilege that still has not been properly invoked." (Docs. 185 at 2, 186 at 7-8). In this claim, Defendant essentially argues what he has already argued to this Court—that then-Attorney General Bondi needed to invoke the deliberative-process privilege. *See* Docs. 141 at 18, 129 at 12. However, this is not so. Defendant cites to *U.S. v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980), to support the proposition that a department head, and not an attorney, must assert claims of privilege. (Docs. 129 at 12, 186 at 8). However, the *O'Neill* Court explicitly stated:

> It has been **suggested** that it is inappropriate for the privilege to be invoked by attorneys instead of by the department head . . . **We need not decide if this is always the case**[.]

*Id.* (emphasis added). Moreover, Defendant acknowledges that "courts in some jurisdictions permit an agency head to delegate this authority[.]" (Doc.

186 at 8) (citing *Scott Paper Co. v. U.S.*, 943 F.Supp.501, 502-03 (E.D.Pa. 1996)).

What is more, the deliberative-process privilege is invoked by Federal Rule of Criminal Procedure 16, which states that, "[e]xcept as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed.R.Crim.P. 16(a)(2). *See also U.S. v. Furrow*, 100 F.Supp.2d 1170, 1174 (C.D.Cal. 2000) ("[The Death Penalty Evaluation Form and prosecution memorandum are] deliberative and pre-decisional process; accordingly, they fall within the 'deliberative process' privilege, and the government should not be compelled to produce them to defendant."); *U.S. v. Taylor*, 608 F.Supp.2d 1263, 1269 (D.N.M. 2009) "[T]he death penalty procedures do not create enforceable substantive or procedural rights for [Defendant], the refusal to disclose the information is a matter of prosecutorial discretion unreviewable by the courts, and the information is protected by the deliberative process and work product privileges, as well as Rule 16(a)(2)[.]"; *U.S. v. Frank*, 8 F.Supp.2d 253, 285 (S.D.N.Y. 1998) ("Discovery of the deliberative materials would have a chilling effect on the thorough evaluation of these issues and

hinder the just, frank, and fair review of the decision for every individual defendant who faces the prospect of receiving a Notice of Intent to Seek the Death Penalty.").

Defendant writes that "claims of . . . privilege must be asserted document by document, rather than a single, blanket assertion." (Doc. 186 at 8 (quoting *U.S. v. Rockwell Int'l,* 897 F.2d 1255, 1265 (3d. Cir. 1990)).[2] However, this representation is inaccurate. Indeed, Federal Rule of Criminal Procedure 26 states:

> **(A)** *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> > **(i)** expressly make the claim; and
> > **(ii)** describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

---

[2] The Court notes that Defendant omits a key and important distinction from the quotation in *Rockwell,* which refers to attorney-client privilege—not deliberative-process privilege. *Id.* ("Specifically, claims of **attorney-client privilege** must be asserted document by document, rather than as a single, blanket assertion.") (emphasis added).

Fed.R.Crim.P. 26(b)(5)(A). Here, the Government explicitly stated that the documents Defendant sought to discover were privileged documents:

> The defendant's request seeks **correspondence, communications, and documents related to the internal DOJ authorization process**. He requests, among other things, all correspondence and communications related to consultation with the Capital Case Section, or all correspondence and communications concerning the Committee's recommendation to the Attorney General . . . All the requested materials are protected by the deliberative process privilege and the attorney work product doctrine, and any contrary authority cited by defendant is inapposite.

Doc. 101 at 16 (emphasis added). Thus, the Court will not disturb its own holding that the Government sufficiently "describe[d] the nature of the documents" such that it properly invoked the deliberative-process privilege.

Finally, Defendant argues that "[i]t was manifestly unjust clear error to apply the procedural bar of 'failure to exhaust administrative remedies.'" (Docs. 185 at 2, 186 at 9-11). However, the Court did not apply such an all-or-nothing approach. Indeed, the "failure to exhaust administrative remedies" was not mentioned as one of the reasons for holding that the Government was not required to invite Defendant to submit mitigating evidence. (Doc. 159 at 12). The Court merely noted as an aside that Defendant did not utilize the

§9-10.160(b) procedure outlined in the Justice Manual, which is a matter of executive agency discretion. *Id. U.S. v. Shakir* supports the proposition that the Court may not interfere in a matter of executive agency discretion. 113 F.Supp.2d 1182, 1191 (M.D.Tenn. 2000). Therefore, even if the many reasons cited by the Court were not enough, the Court did not have jurisdiction to usurp the administrative remedy already offered to Defendant.

For the reasons set forth above, Defendant's motion for reconsideration (**Doc. 185**) will be **DENIED**.[3] An appropriate order shall follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 6, 2026**
24-20-02

---

[3] Counsel is further admonished, as noted above, that leaving relevant descriptive language and/or loosely relating the facts of a case cited or opinion noted is unacceptable.