**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF SAINT CROIX**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 1:24-20** |
| **ROSNIEL DIAZ-BAUTISTA,** | : | **(JUDGE MANNION)** |
| **Defendant.** | : | |

**MEMORANDUM**[1]

Pending before the Court is Rosniel Diaz-Bautista's ("Defendant") "motion for informational outline of non-statutory aggravating factors." (**Doc. 157**). For the reasons stated herein, the motion will be **GRANTED** to the extent it calls for evidence beyond that which was already provided to Defendant.

## I.    BACKGROUND

On December 17, 2024, a federal grand jury sitting in the District of the Virgin Islands returned an indictment charging Defendant with: (1) use of a firearm during a crime of violence resulting in death, in violation of 18 U.S.C. §924(j)(1), which is a death-penalty-eligible offense; (2) discharge of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C.

---

[1] This case was transferred to the undersigned on February 20, 2026.

§924(C)(1)(a); and (3) first degree murder, in violation of 14 V.I.C. §§921, 922(a)(1), and 923. (Doc. 24). The charges arise from an incident which occurred in the early morning hours of September 8, 2024, wherein the Government alleges that Defendant gunned down Indierra Morales ("Decedent") as she sat in her black Acura parked in front of Alba's Bar and Restaurant in Frederiksted. (Doc. 1).

On December 19, 2024, Defendant filed an unopposed motion to designate the case as complex, which was granted—resulting in a continuance of discovery, deadlines, and the trial date. (Docs. 26, 28). On July 31, 2025, the Government filed a notice of intent to seek the death penalty ("NOI"). (Doc. 54). Defendant filed the instant motion on April 24, 2026. (Doc. 157). The Government filed its brief in opposition on May 15, 2026. (Doc. 189). Defendant filed his reply to the Government's response on May 29, 2026. (Doc. 198). This motion is now ripe for review.

## II.    LEGAL FRAMEWORK

The Federal Death Penalty Act, 18 U.S.C. §§3591–3599, authorizes the death penalty for defendants guilty of certain homicides, if an aggravating circumstance makes a death sentence neither "excessive" nor "grossly

- 2 -

disproportionate." *United States v. Savage*, 970 F.3d 217, 288 (3d Cir. 2020) (quoting *Coker v. Georgia*, 433 U.S. 584, 592 (1977). "[I]n capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner." *United States v. Cole*, 799 F. Supp. 3d 438, 441 (D.V.I. 2025) (quoting *Illinois v. Somerville*, 410 U.S. 458, 461 (1973) (internal citations omitted); *see also Cole*, 799 F. Supp. 3d at 469 (quoting *Strickland v. Washington*, 466 U.S. 668, 704 (1984) (Brennan, J., concurring in part and dissenting in part) ("[W]e have consistently required that capital proceedings be policed at all stages by an especially vigilant concern for procedural fairness and for the accuracy of factfinding[.]")).

If the Government intends to seek the death penalty, it must file a pretrial notice "stating that . . . the circumstances of the offense" justify a capital sentence and specifying which "aggravating factor or factors" it "proposes to prove." *Savage*, 970 F.3d at 288 (quoting 18 U.S.C. §3593(a)). The FDPA identifies sixteen statutory aggravating factors for homicide, and the Government can propose additional non-statutory aggravators tailored to the offense. *See* §3592(c). The FDPA also identifies seven mitigating factors, plus a catchall provision for any "factor[ ] in the

defendant's background, record, or character or any other circumstance of the offense that mitigate[s] against imposition of the death sentence." §3592(a).

18 U.S.C. §3591(a) states that a defendant may be sentenced to death only after a jury considers "the factors set forth in section 3592." §3592(c) provides that "[t]he jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. §3592(c). Further:

> The [G]overnment may present any information relevant to an aggravating factor for which notice has been provided under subsection (a). Information [during the penalty phase] is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

*Id.*

The court in *U.S. v. Solomon* well articulates the imposition of the death penalty, and factfinder's role:

> Sentencing in a federal capital case is composed of two discrete phases. *See* 18 U.S.C. §3591, *et seq.* The first

- 4 -

phase, "eligibility," requires the factfinder to determine whether the defendant qualifies for the death penalty, while the second phase, "selection," necessitates a decision as to whether a particular defendant "should in fact receive that sentence." *Tuilaepa v. California*, 512 U.S. 967, 972 (1994). In both the eligibility and selection inquiries, the process must be "neutral and principled so as to guard against bias or caprice in the sentencing decision." *Id.* at 973, 114 S.Ct. 2630.

To be eligible for the death penalty in a homicide case, the factfinder must convict the defendant of capital murder, finding the requisite "intent" as delineated in 18 U.S.C. §3591(a)(2). Next, it must find beyond a reasonable doubt the existence of at least one statutory aggravating factor for which the defendant received notice. *See* 18 U.S.C. §3592(c)(1)-(16) and 3593(c) & (e); *see also* Tuilaepa, 512 U.S. at 971–72.

If the defendant is eligible for the death penalty, the factfinder proceeds to the selection phase. The jury must weigh any aggravating factors proven beyond a reasonable doubt to the satisfaction of a unanimous jury against mitigating factors proven by a preponderance of the evidence found by at least one juror to make "an individualized determination on the basis

- 5 -

of the character of the individual and the circumstances of the crime" of whether this defendant should receive a death sentence. Zant v. Stephens, 462 U.S. 862, 879 (1983) . . . The aggravating factors may include non statutory aggravating factors put forth by the Government. 18 U.S.C. §3593(a) (stating that aggravating factors may include "any other relevant information" provided that the [G]overnment provides notice to the defendant).

513 F.Supp.2d 520, 525 (W.D.Pa. 2007). "The Court's screening of aggravating factors is essential in channeling, directing and limiting the sentencer's discretion to prevent arbitrary and capricious imposition of the death penalty." *Id.* "In deciding whether to admit information with regard to any aggravating factor at sentencing, the Court must ensure that such information is relevant, reliable, and less prejudicial than probative." *Id.* at 537 (citing *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)). "At the same time, the Court should lean in favor of admitting as much information as possible to allow the jury to make an individualized determination of whether the defendant merits the death penalty." *Id.* (citing *United States v. Davis*, 912 F.Supp. 938, 941 (E.D.La.1996)).

**DISCUSSION**

The Government's NOI in Defendant's case alleges one statutory aggravating factor, "grave risk of death," and three non-statutory aggravating factors: (1) "participation in additional uncharged murders, attempted murders or other serious acts of violence," (2) "future dangerousness," and (3) "victim impact." (Doc. 54). Defendant's motion requests this Court to direct the Government to "provide an informational outline of the non-statutory aggravating factors it would rely upon in this case." (Doc. 157 at 1). The Government argues that "the law does not require [it] to identify the evidence it will present in aggravation, let alone to identify and detail such evidence this far in advance[.]" (Doc. 189 at 1-2). The question becomes whether the interests of justice require this Court to mandate the Government to supply Defendant with an informational outline as to the non-statutory aggravating factors it intends to prove. The Court answers in the affirmative, to the extent Defendant is entitled to certain disclosures beyond what was already provided by the Government.

Although the United States Court of Appeals for the Third Circuit has not directly contemplated this issue, district courts within the Third Circuit

- 7 -

have explored the feasibility of ordering an informational outline in a death penalty case. For example, in *United States v. Hammer*, the defendant was charged with killing Andrew Marti at the Allenwood Federal Correctional Complex in White Deer, Pennsylvania, in violation of 18 U.S.C. §1111. No. 4:96-CR-239, 2011 WL 6020157 (M.D.Pa. Dec. 1, 2011). After being awarded a new penalty phase hearing, the defendant filed a motion requesting "an order requiring the Government to provide the defense with [i]nformational [o]utlines summarizing what the Government intends to prove regarding the intent factors, the statutory aggravating factor of substantial planning and premeditation, and the two non-statutory factors of future dangerousness and victim impact." *Id.* at *5. The court explained:

> There are two reasons that the Court may order the Government to provide an informational outline. First, a court may order the government provide an [i]nformational [o]utline . . . to allow the defendant to adequately prepare for the sentencing proceeding . . . Due process requires that a defendant receive sufficient notice of aggravating factors to enable him to respond and prepare his case in rebuttal. In evaluating whether due process is satisfied, the Notice of Intent must be considered in conjunction with the offense as charged in the indictment. Second, a court may order the

- 8 -

government provide an [i]nformational [o]utline to ensure the evidence presented at trial complies with the mandates of 18 U.S.C. §3593(c) and the Constitution. The Federal Rules of Evidence do not apply at a sentencing, but evidence must be excluded if "its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C, §3593(c). In addition, the information must satisfy the "heightened reliability" requirements of capital sentencing required under the Eighth Amendment. The Court's screening of aggravating factors is essential to channeling, directing and limiting the sentencer's discretion in order to prevent arbitrary and capricious imposition of the death penalty.

*Id.* at 2 (internal citations omitted). "In order to ensure that [the defendant's] due process rights [were] protected and that the [c]ourt [could] properly screen the information the parties [would] introduce at the sentencing proceeding," the court granted the defendant's motion and directed the Government to "outline the general nature of the evidence it [sought] to introduce in support of the threshold findings and specified aggravating factors." *Id.* at *9.

- 9 -

In addition to *Hammer*, Defendant draws the Court's attention to the familiar case, *United States v. Con-Ui*, arguing that he requests identical relief to that defendant: an informational outline for each of the exact same non-statutory factors. (Doc. 157 at 16 (citing No. 3:13-CR-123, 2016 WL 9331115 (M.D.Pa. Jan. 28, 2016)). In *Con-Ui*, the defendant was charged with two capital offenses and one non-capital offense. *Id.* at *1. Count One of the indictment alleged that the defendant committed first-degree murder of a federal corrections officer, in violation of 18 U.S.C. §1111; Count Two alleged that the officer's murder occurred while he was engaged in the performance of his official duties, in violation of 18 U.S.C. §1114(1); and Count Three alleged that the defendant, while a federal inmate, knowingly possessed a prohibited object, namely, a sharpened weapon commonly known as a "shiv" or a "shank," in violation of 18 U.S.C. §§1791(a)(2), (d)(1)(B), and (b)(3). 2016 WL 9331115, at *1.

In the NOI, the Government included six statutory factors under the FDPA, and three non-statutory factors, which stated:

> 1. The defendant has participated in other serious acts of violence—adjudicated and unadjudicated—including, but not limited to:

(a) In September-October 1999, the defendant agreed to participate in the stabbing of other inmates at ASPC ("Arizona State Prison Complex") Florence, AZ;

(b) On June 2, 2000, the defendant assaulted a fellow inmate with a metal food tray at ASPC Winslow, Arizona . . . [etc.]

2. The defendant represents a continuing danger to the lives and safety of other persons, because he committed the acts alleged in the capital offenses charged in the indictment and in the statutory and non-statutory aggravating factors alleged in this Notice and, in addition, has committed and exhibited acts and characteristics including but not limited to the following:

(a) The defendant demonstrates a low potential for rehabilitation as evidenced by, among other things, his commission of these crimes while serving a sentence of confinement, his prior serious criminal convictions for murder and drug trafficking, his uncharged involvement in a plan to murder a police officer . . . [etc.]

(b) After commission of the offenses charged in the Indictment, the defendant, through his actions and statements, demonstrated utter lack of remorse over having committed the offenses.

3. Victim impact to be demonstrated by the victim's personal characteristics as an individual human being and the impact of

- 11 -

the death upon the victim and the victim's family and friends, the defendant caused injury, harm, and loss to the victim and the victim's family and friends, including, but not limited to (names omitted).

*Id.* at 1-2. The defendant subsequently filed a motion seeking an "outline regarding the following factors: (1) evidence of especially heinous, cruel or depraved manner of killing (statutory); (2) substantial planning and premeditation (statutory); (3) participation in other uncharged acts of violence (non-statutory); (4) future dangerousness (non-statutory); and (5) victim impact (non-statutory)." *Id.* at 16. When addressing the non-statutory factors, the court addressed each in turn, ultimately ordering that the Government provide an outline consistent with its analysis. *Id.* at 17.

This Court is persuaded, in part, by the approaches taken by the *Hammer* and *Con-Ui* Courts. Moreover:

> [These] ruling[s] [do] not preclude the Government from submitting additional evidence at trial that is not disclosed in the [i]nformational [o]utline[s]. If the Government needs to submit additional evidence in support of the intent or aggravating factors, it must make a good faith showing as to why that evidence was not disclosed in sufficient time for Defendant to adequately review the evidence. The additional

- 12 -

evidence should be disclosed to Defendant sufficiently in advance of the hearing so that it can be investigated by the defense.

*Con-Ui*, 2016 WL 9331115 at *17 (quoting *Hammer*, 2011 WL 6020157 at *3).

### A. Participation in Unadjudicated Conduct or Other Serious Acts of Violence

In the case at bar, the NOI alleges that Defendant "faces separate charges of an attempted murder in which he fired numerous shots into a moving vehicle, striking the driver and passenger." (Doc. 54 at 3). Defendant argues that the allegation of unadjudicated conduct raises important considerations, namely, "before unadjudicated conduct may be presented to a sentencing jury, the Court must make a threshold finding that the underlying evidence is sufficiently reliable to warrant consideration. Without an informational outline identifying the specific conduct the [G]overnment intends to prove, that threshold determination is impossible." (Doc. 157 at 15). The Government responds by stating that "[a]lthough the indictment and NOI do not include evidentiary detail . . . [D]efendant is very much aware of his own criminal conduct." (Doc. 189 at 11).

- 13 -

Moreover:

> [T]he [G]overnment has provided a copy of the criminal information that details the attempted first-degree murder charges that names the alleged victims in Counts 1 and 2, a copy of the affidavit by Detective Lester Michell that sets forth the date of the offense and the facts, which he believed, establish probable cause that . . . [D]efendant committed attempted first-degree murder. The affidavit contains a summary of the statements made by the victims to the police, the victims' reported injuries, a list of evidence collected by the officers, a summary of statements made by potential witnesses, and the means by which officers identified . . . [D]efendant as the perpetrator.

*Id.* However, Defendant avers that the Government's perspective runs afoul to the presumption of innocence—allegedly, no discovery has been provided regarding "attempted murders" or "other serious acts of violence" allegedly committed by Defendant. (Doc. 198 at 8). Defendant therefore states that because the Government did not provide such discovery, "[p]resumably. . . [Defendant] has not committed such offenses." (Doc. 198 at 8).

In *Con-Ui*, the Government specified five uncharged acts of violence it intended to prove, however, the NOI stated that the evidence was not limited

- 14 -

to the proffered events. *Con-Ui*, 2016 WL 9331115 at *18. The defendant requested an outline providing:

> (1) a comprehensive list (that limits the proposed introduction of evidence to those acts specifically referenced) of each and every uncharged act of serious violence, (2) the names of witnesses and summary of testimony, and (3) a list of all documents, exhibits, and other evidence the [G]overnment intend[ed] to introduce.

*Id.* The court ordered the Government to provide the above-listed outline; however, it did not limit the Government to only the acts listed in the NOI and permitted the Government to supplement the outline upon good cause. *Id.* The court reserved judgment on the admissibility of evidence pending the Government's proffer. *Id.* (internal citations omitted).

Although there may be doubt as to whether unadjudicated conduct may be considered as an independent aggravating factor, "there is little doubt that unadjudicated conduct can be considered *in support* of another aggravating factor, such as future dangerousness." *United States v. Williams,* No. 4:08-CR-70, 2013 WL 1335599 at *34 (M.D.Pa. Mar. 29, 2013) (emphasis added).

Here, since the Government already provided Defendant with "criminal information . . . that names the alleged victims[,] . . . a copy of the affidavit by Detective Lester Michell that sets forth the date of the offense and the facts[,] . . . a summary of the statements made by the victims to the police, the victims' reported injuries, a list of evidence collected by the officers, a summary of statements made by potential witnesses, and the means by which officers identified . . . [D]efendant as the perpetrator[,]" (Doc. 189 at 11), the Court finds that the Government has, in essence, already provided Defendant with an informational outline regarding his unadjudicated conduct.

Nonetheless, this Court is persuaded by Defendant's concern of ambush at the penalty phase. The Court, therefore, will order the Government to submit a proffer of the evidence it seeks to use to prove Defendant's unadjudicated conduct or other serious acts of violence, to the extent it exists beyond that which was already provided to Defendant. *See id.; see also Con-Ui, 2016* WL 9331115 at *18, *supra.*

## B. Future Dangerousness

In the NOI, the Government alleges that Defendant "poses a patent risk of future dangerousness to the lives and safety of others, as

- 16 -

demonstrated by committing the current offense while on pretrial release for attempted murder and also two pending local firearm charges in Superior Court." (Doc. 54 at 3). Defendant argues that Government is overly vague in its assertions and does "not explain in what way prior allegations (of which . . . Defendant is presumed innocent) demonstrate danger in the future." (Doc. 157 at 14). Additionally, Defendant claims that the NOI does not "explain how the prior local offenses demonstrate future dangerousness should [Defendant] be sentenced to life in prison without the possibility of parole." *Id.* Finally, Defendant argues that the NOI "fails to detail to whom [Defendant] poses a danger—the decedent's family, witnesses, society at large, corrections staff[,] or other inmates[.]" *Id.*

In response, the Government argues that it "provided notice that it intended to present evidence of . . . [D]efendant's pending local charges to argue [that D]efendant is a future danger to others." (Doc. 189 at 12). The Government:

> [P]rovided three criminal informations and affidavits of probable cause. The affidavits of probable cause provide the name of the investigating officer, a detailed factual summary of the offenses, witness statements, if applicable, a summary

- 17 -

of the evidence, the names of potential witnesses, statements made by . . . [D]efendant, if applicable, and the means by which the police identified . . . [D]efendant as the perpetrator.

*Id.* The Government argues that "the law does not require [it] to provide a roadmap of [its] evidence or the way in which [it] will prove this non-statutory aggravating factor at trial[.] The law requires adequate notice, which the [G]overnment has provided." *Id.* The Defendant avers, however, that the Government does not make clear whether this factor only includes the previously charged local offense or other conduct, leaving Defendant to guess at the multitude of ways the Government intends to prove this factor. (Doc. 157 at 14).

With respect to this factor in *Con-Ui,* the defendant asked for:

(1) A comprehensive (all-inclusive) list of each act and characteristic alleged; (2) a list of witnesses for each act and characteristic with a summary of each witness's proposed testimony; and (3) all evidence (documents, FBI 302 interviews, BOP records, exhibits, etc.) the [G]overment intend[ed] to introduce at trial.

*Con-Ui*, 2016 WL 9331115 at *19. The court granted the defendant's request and notified the [G]overnment that it could supplement its outline upon good cause. *Id.*

Here, it is unclear whether the Government intends to introduce more than Defendant's "pending local charges" (Doc. 189 at 2), though the Court finds that the information the Government already provided to Defendant regarding that conduct is sufficient. (Doc. 189 at 12). Thus, to provide Defendant with adequate preparation and prevent ambush, and to allow the Court to properly screen the Government's evidence, consistent with *Con-Ui*; the Government will be ordered to provide an informational outline of the evidence it intends to introduce to the extent it relates to Defendant's conduct beyond his prior and/or pending local criminal offenses. *Con-Ui*, 2016 WL 9331115 at *19. The Government may supplement the outline upon a showing of good cause and adequate notice to Defendant. *Id.*

## C. Victim Impact

In the NOI, the Government alleges that Defendant caused "injury, harm, and loss . . . with respect to the victim[, which] is evidenced by the victim's personal characteristics and by the impact of the victim's death upon

- 19 -

her family, friends and her community." (Doc. 54 at 3). Defendant argues that the NOI is "silent on what characteristics the [G]overnment intends to prove, which family members and friends were impacted, and the nature of the impact and harm they suffered." (Doc. 157 at 10).

§3593(a), which concerns the notice the Government must provide a defendant with respect to aggravating factors, states:

> The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information. The court may permit the attorney for the government to amend the notice upon a showing of good cause.

18 U.S.C. § 3593(a).

In the Government's brief in opposition, it states that "[t]he information provided by the [G]overnment in its NOI, together with the additional information provided through discovery, allows [Defendant] to prepare for the victim impact testimony. The [G]overnment has provided interviews with the

- 20 -

victim's mother, sister, coworkers and friends[.]" (Doc. 189 at 13-14). In his reply, Defendant acknowledges that the Government has identified such interviews, however, none of those interviews discuss the "victim's personal characteristics" nor the "impact of the victim's death upon her family, friends and her community," as mentioned in the NOI. (Doc. 198 at 9).

The Government also states that Defendant "need not be informed of the specifics of each witness's testimony in order to be able to prepare to cross-examine the witnesses if he so chooses." (Doc. 189 at 14). However, Defendant is requesting, for example, "(1) a list of the personal characteristics of the victim the [G]overnment intends to prove; (2) whether the [G]overnment intends to present testimony of individuals who are not identified by name in the [NOI]; (3) the categories of injury, harm, and loss that it intends to present during the penalty phase; and (4) any other pertinent information." (Doc. 198 at 5). This *exact* requested outline was ordered by a district court within the Third Circuit. *See, e.g. United States v. Williams*, No. 4:08-CR-70, 2013 WL 1334499 at *40 (M.D.Pa. Mar. 29, 2013).

The Court recognizes, however, that the "[G]overnment has provided interviews with the victim's mother, sister, coworkers and friends[.]" (Doc.

- 21 -

189 at 13-14). Accordingly, "the Court will order the Government to outline the type and scope of the 'devastating effect' suffered by [the] victim, his or her family members, and other individuals as relevant, [to the extent it extends beyond that already provided to Defendant], and the 'personal characteristics' of the victim that it intends to prove. The Court envisions a document that is akin to an informative outline, but not a revelation of evidentiary detail or the Government's theory of its case." *Solomon*, 513 F.Supp.2d at 535; *see also Hammer*, 2011 WL 6020157 at *3; *Con-Ui*, 2016 WL 9331115 at *19. The Government may supplement the outline upon a showing of good cause and adequate notice to Defendant. *Id.*

### III.     CONCLUSION

For the aforementioned reasons, Defendant's motion will be **GRANTED** to the extent it applies to information which was not already provided to Defendant in discovery, the NOI, the criminal information, and the indictment. An appropriate order shall follow.


_s/ Malachy E. Mannion_
**MALACHY E. MANNION**
**United States District Judge**


**DATE: July 17, 2026**
24-20-03

- 23 -